ROY ALDRICH

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906—Rehearing denied Feb. 7, 1907.*

1. LARCENY—*when the taking is felonious though possession is knowingly surrendered.* Where the owner of goods voluntarily parts with possession of property but retains the title, expecting the goods to be returned to him or disposed of in a certain manner, the subsequent felonious conversion of the property will relate back and make the taking and conversion larceny.

2. SAME—*a bailee cannot consent to a taking of property.* The voluntary surrender of goods by a bailee to a person who he supposed was entitled to them but who intends to, and does, feloniously convert the same to his own use, does not prevent the taking and conversion from amounting to larceny.

3. SAME—*one who shifts checks and converts trunk to his own use is guilty of larceny.* One who changes the checks upon a trunk in charge of a transportation company, thereby intending to feloniously convert the trunk and its contents to his own use, is guilty of larceny, where his object is accomplished, notwithstanding the servants of the transportation company voluntarily parted with possession of the trunk upon delivery of the check.

4. SAME—*when conviction may be had under an indictment for larceny.* Where, with intent to steal, a person sets in motion any agency, animate or inanimate, with the design of effecting a transfer of the possession of goods of another to him in order that he may feloniously convert the same to his own use, and which design is successfully accomplished, a conviction may be had upon a common law indictment charging a felonious taking and carrying away of the goods.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE KERSTEN, Judge, presiding.

The record in this case brings up for review the judgment of conviction of Roy Aldrich for the crime of larceny.

The facts developed on the trial were, in substance, as follows: In July, 1905, Miss Flora May Barr checked her trunk at Grand Haven, Michigan, for Chicago, and took passage on one of the steamships belonging to the Goodrich

Transportation Company. She left Grand Haven about 9:15 on the evening of July 10 and arrived at Chicago about six o'clock on the morning of the 11th. At Chicago Miss Barr gave the check for her trunk to a transfer company, with instructions to transfer it to the Burlington depot and re-check it to Oakland, California, which was done. Miss Barr saw the baggageman attach the check to her trunk at Grand Haven, where she received a duplicate check, but she did not see the trunk again before leaving Chicago for Oakland. Upon her arrival at Oakland she gave her trunk check to a transfer company, with instructions to deliver the trunk to her at the place where she intended to stop. When the trunk was brought to her she at once discovered that it was not her trunk. She refused to receive the trunk, although it had a check attached to it corresponding to the one which she had received for her trunk at Chicago. The trunk which was sent to Oakland was a zinc-covered trunk with an oval top, while Miss Barr's trunk was a canvas-covered trunk and of a different shape. Miss Barr's trunk contained between $300 and $400 worth of wearing apparel and other articles of value which she intended to take with her on her summer trip to California, while the trunk which was brought to her at Oakland was afterwards found to contain nothing except waste paper and rubbish. She immediately notified the Goodrich Transportation Company of the loss of her trunk and shipped the empty trunk back to Chicago. The Goodrich Transportation Company instituted a search for the missing trunk. About a week or ten days after Miss Barr passed through Chicago an unknown man appeared at the baggage room of the Goodrich Transportation Company in Chicago with two trunks, bought a ticket and checked the trunks to Milwaukee. The servants of the transportation company, in handling the two trunks, discovered that they were apparently empty,—at least they were very light. It was also noticed that both of these trunks had the locks broken and that they were fastened with ropes or straps. When

the boat arrived at Milwaukee plaintiff in error presented two checks and demanded the two trunks. The employees in charge of the boat, suspecting that this transaction might not be all right, refused to deliver the trunks to Aldrich in Milwaukee but agreed to re-check them for him back to Chicago, which they did. The trunks were not called for after their return to Chicago for several days. Finally plaintiff in error presented checks and demanded the two trunks. The transportation company again refused to deliver the trunks to plaintiff in error. Plaintiff in error called a second time and demanded the trunks, and threatened legal proceedings unless they were delivered to him. In the meantime one of the trunks had been positively identified as Miss Barr's lost trunk. It was afterwards learned that a man by the name of Frank Bushre had hauled the two empty trunks from a room occupied by plaintiff in error in a house at 128 Dearborn avenue, Chicago. It is also shown that plaintiff in error and a woman known as Daisy Dean occupied the room from which the trunks were obtained by Bushre. Plaintiff in error was then arrested on a charge of larceny of the Barr trunk and its contents. In the room occupied by plaintiff in error and the woman were found substantially all of the articles which Miss Barr had packed in her trunk in Grand Haven, Michigan, and these articles were afterwards identified by her as her property. There was also found in this room a large quantity of other goods of various description, among other things, two tickets from Grand Haven to Chicago which had never been used.

The theory of the prosecution is, that plaintiff in error, somewhere between Grand Haven and Chicago, transferred the check from the zinc-covered trunk to Miss Barr's trunk and from her trunk to the zinc-covered trunk, and that the plaintiff in error secured possession of Miss Barr's trunk by having the duplicate of the check that was originally attached to the zinc-covered trunk. Plaintiff in error denies all connection with the theft, and claims that he bought the

stolen trunk, together with another large trunk, from a man by the name of Doc. Lebey. His explanation as to how he obtained possession of the lost trunk is not corroborated by any testimony in the record or by facts and circumstances.

The indictment charged the plaintiff in error with feloniously stealing one trunk and various articles of personal property, the personal goods and property of the Goodrich Transportation Company, a corporation of the State of Wisconsin. The jury found plaintiff in error guilty and found the value of the property stolen to be $230. Motions for a new trial and in arrest of judgment were made and severally overruled, and plaintiff in error was sentenced to an indeterminate term of imprisonment in the penitentiary.

CANTWELL & ERBSTEIN, and CHARLES P. R. MACAULAY, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, and JOHN R. NEWCOMER, (HOWARD O. SPROGLE, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

1. The court instructed the jury, as a matter of law, that if one obtains property from the owner or custodian thereof by some sort of a trick or device, for the purpose of stealing and converting the same to his own use, he will be guilty of larceny. Error is assigned upon the giving of this instruction. The contention of plaintiff in error is, that if the property was obtained with the consent of the transportation company it would not amount to larceny, even though such consent was obtained by means of a trick or device and with the intention of stealing the same.

It is an established rule of the common law relating to the offense of larceny, that if the owner of the goods alleged to have been stolen parts with both the possession and the

224—40

title of the goods to the alleged thief, not expecting the goods to be returned to the owner or to be disposed of in accordance with his directions, then neither the taking nor the conversion amounts to larceny; and this is true even where the owner is induced to part with the title and possession through the fraud and misrepresentation of the alleged thief. If, however, the owner merely parts with the possession and retains the title, expecting and intending that the goods shall be returned to him or disposed of in some particular manner agreed upon, in such case the subsequent felonious conversion of the property by the alleged thief will relate back and make the taking and conversion a larceny. *Welsh* v. *People,* 17 Ill. 339; *Stinson* v. *People,* 43 id. 397; *Murphy* v. *People,* 104 id. 528; *Johnson* v. *People,* 113 id. 99; *Quinn* v. *People,* 123 id. 333; *Doss* v. *People,* 158 id. 660; *Steward* v. *People,* 173 id. 464; *Bergman* v. *People,* 177 id. 244.

The doctrine illustrated and applied in the above cases is based on the rule of the common law that every larceny includes a trespass, and since the alleged thief could not commit a trespass on property in his possession and respecting which the owner had parted with the possession and title, such property could not be the subject of larceny by the fraudulent possessor. The above rule does not, in our opinion, have any application to the case at bar, for the reason that the Goodrich Transportation Company held the trunk and its contents merely as bailee of the rightful owner, of which plaintiff in error must, upon the theory of the prosecution, be presumed to have had notice, and therefore such transportation company had no authority to consent to the title passing, with the possession, to plaintiff in error. But even if it could be held that the corporation could have given such consent by its proper officers, it certainly cannot be said that the mere act of its servants in turning over the trunk to plaintiff in error upon the mistaken supposition that he was entitled to the possession thereof, would amount to such a consent as is necessary to bring the case within the rule con-

tended for by plaintiff in error. In McClain on Criminal Law (vol. 1, sec. 558,) it is said: "The fact that the servant in whose possession the property is, consents to its taking will not prevent the act being larceny, he having no authority to consent, and the wrongdoer being aware of that fact." (*State* v. *McCartey*, 17 Minn. 76; *People* v. *Griswold*, 64 Mich. 722; *State* v. *Edwards*, 36 Mo. 394.) It seems clear, on principle, that if property is obtained from an infant or an insane person, who is legally disqualified from giving consent, with the felonious intent to steal the same, such consent could not be availed of as a defense to a charge of larceny. The same principle ought to apply to bailees, whose interest in the property is known to the alleged thief.

In our opinion the case at bar is not controlled by the principle contended for by the plaintiff in error. The case comes within the rule laid down in *Commonwealth* v. *Barry*, 125 Mass. 390. This case, in all of its essential facts, is like the case at bar. The charge was for the larceny of a trunk, and the offense was committed by the shifting of checks, as is alleged in the case at bar. In disposing of the case the court said: "It does not appear that the question whether there was an asportation at or before the changing of the checks was raised at the trial. An asportation at that precise time was unimportant. The real question was whether the defendant then, feloniously and with an intent to steal, set in motion an innocent agency by which the trunk and its contents were to be removed from the possession of the true owner and into the defendant's possession, and by means of such agency effected the purpose. * * * There is no occasion that the carrying away be by the hand of the party accused, for if he procured an innocent agent to take the property, by means of which he became possessed of it, he will himself be the principal offender. (3 Chitty on Crim. Law, 925.) It is held to be larceny if a person intending to steal my horse take out a replevin and thereby have the horse delivered to him by the sheriff, or if one intending to rifle

my goods get possession from the sheriff by virtue of a judg-
ment obtained without any the least color or title, upon false
affidavits, etc., in which cases the making use of legal pro-
cess is so far from extenuating that it highly aggravates the
offense by the abuse put on the law in making it serve the
purposes of oppression and injustice." 1 Hawk. P. C. 333,
par. 12; 1 Hale's P. C. 507.

It will thus be seen that an asportation may be effected
by means of innocent human agency as well as mechanical
agency, or by the offender's own hands. One may effect an
asportation of personal property so as to be guilty of lar-
ceny by attaching a gas-pipe to the pipes of the company and
thus draw the gas into his house and consuming it without
its passing through the meter. (Clark & Marshall on Law
of Crimes, p. 446, and cases cited in note; *Woods* v. *People,*
222 Ill. 293.) From these cases the law appears to be well
settled that where, with the intent to steal, the wrongdoer
employs or sets in motion any agency, either animate or in-
animate, with the design of effecting a transfer of the pos-
session of the goods of another to him in order that he may
feloniously convert and steal them, the larceny will be com-
plete, if, in pursuance of such agency, the goods come into
the hands of the thief and he feloniously converts them to
his own use, and in such case a conviction may be had upon
a common law indictment charging a felonious taking and
carrying away of such goods. If in the case at bar the
accused shifted the checks on the trunks, by means of which
the servants of the transportation company were innocently
led to further the criminal purpose by delivering the trunk
in question to the accused, who received and converted the
same to his own use, and if there was in the mind of the
plaintiff in error a felonious intent to steal this property per-
vading the entire scheme and attending every step of it, then
he is guilty of larceny, and the instruction under considera-
tion, as applied to such a state of facts, is a correct statement
of the law and there was no error in giving it to the jury.

2. Instruction No. 2 given on behalf of the People contains the same principle of law as No. 1, and the objections thereto are disposed of by the foregoing discussion of the first instruction.

Instruction No. 3 relates to the count in the indictment charging plaintiff in error with receiving stolen property. Since the jury acquitted plaintiff in error of this charge we need not consider the exception to this instruction.

3. Instruction No. 7 given for the People is also excepted to. That instruction is as follows:

"The court instructs the jury, as a matter of law, that in this State the accused is permitted to testify in his own behalf; that when he does so testify he at once becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded to his testimony, the jury have a right to take into consideration the fact that he is interested in the result of this prosecution, as well as his demeanor and conduct upon the witness stand; and the jury are also to take into consideration the fact, if such is the fact, that he has been contradicted by other credible witnesses. And the court further instructs the jury, that if, after considering all the evidence in this case, they find that the accused or any other witness has willfully and corruptly testified falsely to any fact material to the issue in this case, they have the right to entirely disregard his testimony, excepting in so far as his testimony is corroborated by other evidence or facts and circumstances in evidence."

The objection to this instruction, as stated by plaintiff in error in his brief, is, that it is erroneous in informing the jury that if they found that any witness had committed perjury they had a right to disregard the testimony of the defendant. This argument is based on the assumption that the pronoun "his," in the third line from the bottom of the instruction, refers to the defendant only, and not to the

defendant *"or any other witness."* This construction is as illogical as it is ungrammatical. The language of the instruction does not mean that the jury should disregard the defendant's testimony if some other witness had willfully and corruptly testified falsely to some material fact in issue, and we cannot believe that any one with intelligence enough to serve on a jury would understand the instruction as announcing a rule so ureasonable and absurd.

Other objections to the instructions given, as well as the exceptions to the refusal of the court to give some and to the modification of other of the instructions of plaintiff in error, have all received our careful consideration, and we have reached the conclusion that no error exists for which the judgment below should be reversed. Accordingly, the judgment below should be and is affirmed.

*Judgment affirmed.*