Raleigh Mfg. Co. v. Great Western S. & R. Co., 227 Ill. App. 221.

# Raleigh Manufacturing Company, Appellee, v. Great Western Smelting and Refining Company, Appellant.

## Gen. No. 27,769.

1. SALES—*good faith and lack of notice as affecting title of purchaser of stolen goods.* A purchaser of brass acquires no title thereto as against the owner, where the purchase in question was made from one who wrongfully obtained possession of such brass as the result of a conspiracy with an employee of the owner who had been expressly forbidden to sell the brass to such person, even though such purchaser has no knowledge of the conspiracy and acted in good faith and without any notice of the owner's rights in making such purchase.

2. SALES—*apparent agency of employee to sell as affecting title of bona fide purchaser of stolen property.* Defendant acquired no title to old brass belonging to plaintiff which defendant bought from one who wrongfully obtained it by conspiracy with an employee of plaintiff who had possession of the brass, even though such employee had possession with apparent authority to sell it, where the evidence shows that defendant's dealings were solely with such third persons who did not pretend to represent plaintiff or have any connection with it, that defendant had no dealings with the employee directly and did not rely upon his apparent agency, and that defendant knew the brass belonged to plaintiff.

3. SALES—*title of purchaser of stolen property not affected by intent with which property stolen.* A purchaser of old brass from one who obtained possession of it by conspiracy with the owner's chief clerk to sell it and appropriate a part of the proceeds for the individual benefit of the conspirators, acquires no title to the brass, even though it was not the purpose of the conspirators to deprive the owner of the entire value of the property, since such conspirators were guilty of larceny regardless of their intention to appropriate only a part of the proceeds.

4. REPLEVIN—*admissibility of evidence of disposition of proceeds of sale of stolen goods sought to be replevied.* In replevin by the owner of brass which had been stolen and sold to defendant by an employee of plaintiff and a dealer in old metals with whom such employee had conspired, it is not error to admit evidence that such dealer had appropriated the entire proceeds of the sale of the brass, as such evidence is admissible on the question of the amount of damages recoverable.

5. APPEAL AND ERROR—*review limited to matters properly indicated by appellant.* An instruction will not be held erroneous as permitting the use of hearsay and self-serving declarations, where such matters are not indicated in the record or suggested by counsel.

6. INSTRUCTIONS—*refusal of instruction previously given in substance.* Refusal of the court to give instructions requested by defendant is not error where defendant's theory of the case has been fully covered by numerous other instructions and those refused are mere repetitions.

7. HARMLESS ERROR—*when reading same instruction twice not reversible error.* It is not reversible error for the court to read the same instruction twice to the jury where it appears that such action was inadvertent, counsel having handed to the court two copies of the same instruction and the court having inadvertently read both copies.

Appeal by defendant from the Circuit Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed on remittitur. Opinion filed December 5, 1922. Rehearing · denied December 18,· 1922. *Certiorari* denied by Supreme Court (making opinion final).

EASTMAN, WHITE & HAWXHURST and MAYER, MEYER, AUSTRIAN & PLATT, for appellant; FREDERIC BURNHAM and HOMER C. DAWSON, of counsel.

TENNEY, HARDING & SHERMAN, for appellee; ROGER SHERMAN and HARRY A. PARKIN, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Cook county in an action of replevin, in favor of appellee. The suit was brought September 1, 1917, to recover possession of 235,955 pounds of brass rods. No property was recovered and the writ was returned no property found. Thereafter, on September 7, 1917, another action of the same kind was brought in the same court against the Chicago, Burlington & Quincy Railroad Company to recover possession of the same

merchandise that was sought in the first suit. In the latter suit 122,612 pounds of the brass rods were recovered. The subject-matter of both suits being identical and the issues and evidence being substantially the same, the two causes were consolidated by stipulation and tried together by the same jury, who, by agreement, were directed to and did return a separate verdict in each case. In the present case the jury found the issues for plaintiff and assessed its damages at the sum of $40,567.45, with interest thereon at five per cent per year from September 1, 1917, to July 13, 1921, amounting to $7,781.90, making the amount of the damages $48,349.35. Upon this verdict judgment was entered after motions for a new trial and in arrest of judgment had been denied. There is practically no dispute as to the evidence in the case, with the single exception of that relating to the value of the brass rods in question. Appellant states that the controversy arises from the inferences to be drawn from the evidence and relates to the admissibility and relevancy thereof.

The record shows that in the month of August, 1917, and for several years prior thereto, the Great Western Smelting and Refining Company had been and was engaged extensively in smelting, compounding and refining metals, having plants in numerous states and abroad, and had had previous dealings with the Raleigh Manufacturing Company, the appellee. In that month appellee had shut down its plant and was dismantling it, selling some of its merchandise on hand and arranging to ship its machinery and equipment to another location. At that time James Raleigh was the president of appellee corporation and had general supervision of its affairs; one William R. LeVine had been in the employ of appellee for two years as chief clerk, his duties being to have charge of the office records and pay roll and to make collections; and one George H. Frederickson was the shop superintendent.

In August, 1917, LeVine had misappropriated the funds of appellee to his own use to an amount ranging from $360 to $470, which was to some extent known by the officers of the company. In November, 1916, and thereafter the appellee had sold to one Frank J. Mann (also known as Mankovitz), a dealer in scrap metal, sundry lots of brass of the aggregate value of $10,000, but in May, 1917, the business relations between Mann and appellee were disturbed by the fact that Mann had given a check of $3,200 in part payment for some of the material purchased by him, which had been dishonored and remained unpaid. In the summer of 1917 the manufacturing plant of appellee was shut down, as above stated, but remained in the charge of its president, James Raleigh, its chief clerk, LeVine, and its shop superintendent, Frederickson. In addition to these persons a watchman and a few others were employed. A few days before the occurrence of the events involved herein, Mr. Raleigh had gone on a vacation trip to Roscommon, Michigan, leaving the plant in charge of LeVine and Frederickson. Before his departure he had instructed both LeVine and Frederickson not to sell any merchandise to anyone, especially to Mann, and not to permit Mann to be around the factory during his absence.

Prior to August, 1917, the Lowenthal Company had been for many years engaged in business as dealers in scrap materials and had had many transactions with appellant and had also bought merchandise from Mann to the amount of approximately $15,000. For some time prior to and during the month of August, 1917, Mann had been attempting to purchase the brass involved herein from the appellee and finally obtained an agreement from LeVine to sell it to him at sixteen cents per pound. On Monday, August 20, 1917, LeVine had requested appellant to send a representative for the purpose of bidding upon a lot of 250,000 pounds of brass rods. Their representative, one Sale,

went to appellant's plant for that purpose. LeVine showed the brass to him and Sale made a bid of seventeen and three-fourths cents per pound for it. Some time during the same month Mann presented to the Lowenthal Company a proposal that it buy from him the brass involved herein, stating that he had purchased the same from the Raleigh Company. After inspecting the brass Lowenthal advised Mann that his company was unable to finance so large a deal, but suggested that he would introduce him to appellant and solicit that concern to purchase the brass.

On August 22, 1917, Mann and Lowenthal visited appellant's plant and had an interview with one Ivan Reitler, the president, then secretary, of appellant, and offered the brass for sale at seventeen and three-fourths cents per pound. Prior to that introduction appellant had never heard of Mann. The officers of appellant company recognized the brass as the same merchandise that had already been offered to them by the Raleigh Company through LeVine, for which they had offered to pay seventeen and three-fourths cents per pound. Mann and Lowenthal suggested that they withdraw their bid, which they refused to do, but offered to pay them the same price if they could make delivery, expressing doubts as to the ability of Mann and Lowenthal to deliver. Appellant's officers were assured by these persons that they could make delivery at that price, for the reason that appellee was under obligations to Mann. Appellant relied upon Lowenthal for protection in the transaction.

Appellant immediately sent its representative, Mr. Sale, to the Raleigh plant to purchase the brass from the Raleigh Company if possible. He took with him a check for $1,000 and renewed the offer to LeVine to pay seventeen and three-fourths cents and tendered the check as earnest money. LeVine refused the offer and stated, in substance, that he had sold the rods to Mann, giving as his reason that Mann had done

·226     Appellate Courts of Illinois.

Raleigh Mfg. Co. v. Great Western S. & R. Co., 227 Ill. App. 221.

various favors to the Raleigh Manufacturing Company in disposing of material and that Mr. Raleigh had asked him to favor Mann and give him this lot of material. Later in the same day Lowenthal called up appellant and confirmed the transaction, stating that Mann could sell the brass at seventeen and three-fourths cents per pound and directed appellant to pay Mann at the rate of seventeen and one-half cents and pay Lowenthal the balance when the transaction was closed. In this interview Lowenthal stated that Mann had showed him a bill of sale from the Raleigh Manufacturing Company for the merchandise. This instrument, described as a bill of sale, purported to be a receipt for $1,000 signed by LeVine on behalf of the Raleigh Company, on account of approximately 240,000 pounds of yellow brass rod, and stated that Frank J. Mann was to pay for each load of brass "before the same leaves the plant of the Raleigh Manufacturing Company." This sum of $1,000 was never paid to appellee and the receipt in question was a fictitious instrument.

A truck company was employed by Mann to haul the rods from appellee's plant and deliver the same to appellant. This was done August 22 and 23, 1917, each load being covered with canvas so as to conceal its contents. The actual amount of brass hauled and delivered was 235,955 pounds. Mann and Lowenthal arranged with appellant's officers that appellant should give to Mann a check for the amount of each load of brass as delivered at the rate of seventeen and one-fourth cents a pound and should hold back one-half cent per pound to be paid to Lowenthal. This arrangement was followed, Mann representing that it was necessary for him to have cash on delivery in order to enable him to pay for the different loads as delivered by him pursuant to his agreement with LeVine and Frederickson. Under this arrangement, five different checks were given to Mann in payment for the

brass at the rate of seventeen and one-fourth cents a pound, the aggregate amount of which was $40,892.20. These checks were immediately indorsed by Mann and his signature approved by one Blum, an officer of appellant corporation, thereby enabling Mann to go directly to the bank on which the checks were drawn and get the money for each of them. Mann kept the money paid to him by appellant and about a week later left the city and has never paid the Raleigh Manufacturing Company anything whatever for the brass.

Appellant heard nothing further about the matter until several days afterward, when LeVine called up its office and stated to Blum, in substance, that there was likely to be some trouble on account of the transaction. Immediately thereafter Blum called up his attorney and asked for advice as to the proper procedure in the matter and was instructed by the attorney to get the material out of the way and refuse information as to its location. Blum then called on Lowenthal and told him what the attorney had said and asked for instructions as to what was to be done with the brass, stating that it was a physical impossibility to melt it at once and suggesting that the brass be shipped to Lowenthal. Subsequently a part of it was so shipped and was recovered under the replevin writ against the Chicago, Burlington & Quincy Railroad Company. Appellant heard nothing further regarding the matter until September 1, 1917, when a written demand was made on it for the 235,955 pounds of brass rods hereinbefore mentioned. Under the advice of counsel, appellant refused to deliver, whereupon the two replevin suits already mentioned were commenced.

It is undisputed that the brass rods in question were of a special size, made for the use of appellee exclusively, rendering them unsalable except as scrap metal. It also appears that seventeen and three-fourths cents per pound was the fair market value of this material, although different values, ranging from

sixteen to eighteen cents per pound, were given by various witnesses.

Appellant opened an account with Mann covering the transaction, but this account was afterwards changed and the name of Lowenthal substituted. It is admitted by appellant that there was an understanding between Mann and LeVine that Mann should pay the Raleigh Manufacturing Company sixteen cents per pound for the material, the payments to be made as each load was taken from appellee's plant. The excess of one and three-fourths cents per pound was to be divided between Mann and LeVine, the latter to receive a sufficient sum to pay the amount of his overdraft with the Raleigh Company and the balance to be used in taking up Mann's dishonored check for $3,200 held by appellee. After the brass had been delivered and paid for by appellant on August 23, 1917, there was an interview between Mann and LeVine at the Sherman House in Chicago, in which Mann stated that he would not pay for the brass but would retain the entire purchase price. Mann tried to induce LeVine to join him in absconding with the money. At that time Mann gave LeVine $2,000 and instructed him as to how his employers could be deceived. Out of this sum LeVine paid his shortage with his employer and bought himself clothes and equipments for the proposed journey. There were subsequent conversations and meetings between Mann and LeVine, in the course of which LeVine changed his mind and subsequently made a practically complete disclosure to appellee regarding the transaction. Mr. Raleigh was brought back to the city, detectives were employed and unsuccessful attempts were made to find and arrest Mann. LeVine testified further as to the transactions immediately prior to the bringing of the suits and various proceedings at the State's Attorney's office, which it is unnecessary to relate in detail.

Appellee contends that there was a criminal con-

spiracy between Mann and LeVine to obtain posses-
sion of this brass, sell it and convert the proceeds, of
which appellant had notice, and that by reason of this
conspiracy and the lack of authority of LeVine and
Frederickson to dispose of the brass, the title never
passed to appellant.  Appellant denies the existence
of any such conspiracy or that it had any notice there-
of, and asserts that LeVine and Frederickson having
apparent authority to dispose of the brass, appellee is
estopped by its conduct from denying the authority of
its agents in possession to dispose of the property.
Appellant urges as grounds for reversal that the ver-
dict was unwarranted and cannot be reconciled in any
manner whatsoever with the evidence; that it is con-
trary to and inconsistent with the instructions of the
court and was the result of passion and prejudice, in-
cited to a great extent by improper evidence received
and the action of the court in ruling upon the same and
the arguments of counsel.  It contends that there was
no evidence tending to show that defendant was not an
innocent purchaser for value of the goods and that the
transaction whereby appellant's vendor obtained the
goods was at the most fraudulent, thereby enabling
him to pass a good title to an innocent purchaser from
him; that the court erred in its rulings in admitting
evidence as to the alleged conspiracy between LeVine
and Mann, the instructions given by plaintiff to its
agents, the concealment of the goods by appellant af-
ter its purchase and in admitting evidence as to con-
versations occurring after the consummation of the
sale by Mann to appellant.

Questions similar to those involved herein have been
considered by the reviewing courts of this State in
many instances, wherein it has been held uniformly
that a vendee of personal property gets the same title
as his vendor.  The rule was established in this State
in the early case of *Fawcett v. Osborn,* 32 Ill. 411,
which was an action of trover to recover the value of

certain merchandise. While this merchandise was in the possession of one of the members of the firm, he conspired with one of the employees to sell it to third parties who were made defendants in a replevin suit to recover the same. The defendants in the replevin suit alleged the same defense as that which is herein asserted, namely, that they had bought the property in good faith in the regular course of business, paying the full price therefor and with no knowledge of a want of title in the vendor who was in possession of the property. The court held that the defendants did not acquire good title to the merchandise and established the rule which has been uniformly followed in this state. The court said, among other things, p. 425:

"The general rule of law, sanctioned by common sense, is, that no man can, by a sale, transfer to another the right of ownership in a thing where he himself has not the right of property, except and this for the sake of sustaining the currency, in the instances of cash, bank bills, checks and notes payable to bearer or transferable by delivery in the ordinary course of business to a person taking it, bona fide, and paying value for it. * * * No one can sell a right when he himself has none to sell. This is a proposition so self-evident that argument cannot elucidate or strengthen it."

The court further said, p. 426:

"The general rule is beyond all controversy or dispute that no man can acquire a title to chattels from a person who has himself no title in them."

The rule thus established has been affirmed in the recent case of *Drain v. La Grange State Bank*, 303 Ill. 330. The purchaser of property wrongfully taken by his vendor can obtain no better title than the vendor himself possesses, and an innocent purchaser without notice of a wrongful taking can acquire no better title to property than that of his vendor.

The court in the *Drain* case also discusses the question of the estoppel which may operate against the person claiming what would otherwise be the better

title. Such estoppel must be based upon the conduct of the true owner, by which he allows another to appear as the owner, having full power of disposition over the property, so that an innocent third person is led into dealing with the apparent owner. As there stated this doctrine has been applied for the protection of innocent purchasers, where the appearance of ownership is in one while the title is in another, or there is a secret lien, *citing authorities.*

Appellant contends that it acquired good title to the merchandise through its purchase from Mann because LeVine had apparent authority to sell. It is true that a principal may be bound to the extent of the apparent authority which he has conferred upon his agent by holding him out to the public as possessing the powers which he exercises, provided the acts constituting representations of the agent's authority are known to the party alleging them. *Merchants Nat. Bank of Peoria v. Nichols & Shepard Co.*, 223 Ill. 41; *Alton Mfg. Co. v. Garrett Biblical Institute*, 243 Ill. 298. If appellant had dealt with LeVine as the agent of appellee and had knowledge of any facts giving color to the agency and relied upon them in its dealings with the agent, it might have been in a position to invoke the rule applicable to a purchase from an agent having apparent authority. In the present case appellant did not purchase from LeVine, who was alleged to have been appellee's agent with apparent authority, but dealt with Mann and Lowenthal, neither of whom pretended to represent appellee. Appellant had never had any prior dealings with either LeVine or Frederickson, and at the time of its purchase had no knowledge of any prior transactions of either of them. The mere fact that they were in possession of the merchandise in question, while it may have indicated title, was not sufficient to protect the purchaser from the demands of the real owner. *Abel v. Poe*, 199 Ill. App. 391; *Independent Brewing Ass'n v. Cook Brewing Co.*, 169 Ill.

232 APPELLATE COURTS OF ILLINOIS.

Raleigh Mfg. Co. v. Great Western S. & R. Co., 227 Ill. App. 221.

App. 347. Appellant knew that the brass rods involved herein were the property of appellee, as it had endeavored to purchase the same directly from appellee, but had preferred to purchase from Mann and Lowenthal for no apparent reason other than the desire to favor the latter and to save the expense of hauling the material from appellee's plant to its own. The law of apparent authority is available against the principal of an alleged agent on behalf of a person purchasing from the principal on the strength of the agent's apparent authority, but cannot support a title obtained from a third person who had first obtained possession of the property from the agent. The authority of the agent must be based upon words and acts of his principal and cannot be created by anything that the agent has said or done; hence, anyone dealing with an assumed agent is bound, at his peril, to ascertain that the agency exists and the extent of the agent's authority. *Merchants Nat. Bank of Peoria v. Nichols & Shepard Co., supra.*

It is undisputed that Mann obtained possession of the brass rods by collusion with LeVine, the object of each of them being to receive a benefit from the transaction at the expense of appellee, LeVine expecting to obtain enough money from the transaction to settle his defalcation and Mann intending to derive enough to enable him to pay his dishonored check held by appellee. This was an unlawful conspiracy between them and was a wrongful conversion of the property. *Aldrich v. People,* 224 Ill. 622. The property of appellee was taken and carried away with the intention of appropriating a pecuniary interest therein. The fact that it was not the intention of the conspirators to deprive the owner of the entire value of the property was not sufficient to change the felonious character of the transaction. The acts contemplated by Mann and Lowenthal amounted to larceny as that offense has been defined by numerous authorities.

*Aldrich v. People, supra; Berry v. State,* 31 Ohio St. 219. It necessarily follows that appellant acquired no better title to the merchandise than that which Mann had. Its vendor had no title because he acquired possession of the property as the result of a criminal conspiracy with LeVine.

It is also contended by appellant that there should be a reversal on account of errors of the court in its rulings upon questions of evidence, but we find no reversible error therein. In the case of some of the errors on which appellant bases its contention, we find that appellant had the benefit of similar rulings over the objections of appellee and is therefore in no position to complain.

It is urged that the court erred in giving plaintiff's instruction number 15, in which the jury were instructed that they had a right to consider "the situation of the parties, their acts at the time of the transactions and afterwards" and that defendant was prejudiced by the testimony showing the appropriation by Mann of the entire proceeds of the sale of the brass. We think that this evidence was admissible as it was necessary to determine the amount of the damages recoverable. It is also said that the instruction was erroneous in permitting the jury to consider statements of the parties or witnesses to third parties in relation to the matters in question, as well as other statements to each other in the presence of third parties, upon the ground that it permitted the use of hearsay and of self-serving declarations. No such hearsay statements or self-serving declarations are indicated in the record or suggested by counsel.

Complaint is made of instruction number 3, in which the jury were apparently given the right to determine what witnesses were successfully impeached, without definition of the meaning of the term "successfully impeached." While this instruction may be subject to criticism, we do not feel justified in regarding it as re-

234 APPELLATE COURTS OF ILLINOIS.

Raleigh Mfg. Co. v. Great Western S. & R. Co., 227 Ill. App. 221.

versible error. As to other instructions of which appellant complains, we think that they were proper, or, if improper in some degree, that they were corrected by other instructions presented to the jury. Appellant also contends that the court erred in refusing to give several instructions offered in its behalf, but we find that defendant's theory of the case was fully covered by numerous other instructions, so that it could not have been injured by the refusal to repeat the same propositions in a different form. One instruction seems to have been read twice to the jury through the inadvertence of the court, counsel apparently having handed to the court two copies of the same instruction and the court having failed to lay one of the sheets aside. While the repetition of instructions is unwarranted, we do not regard this inadvertence on the part of the court as grounds for reversal. The instructions taken as a series, in our opinion, fairly state the law applicable to the case.

While we are of the opinion that a recovery by plaintiff was justified by the evidence and the law, yet we are unable to discover, either from the record or the suggestions of counsel, upon what basis the jury computed the amount of plaintiff's damages. The total amount of brass taken from plaintiff's plant was 235,965 pounds, of which 122,612 pounds were recovered, leaving a balance unaccounted for of 113,343 pounds. It is conceded that the value of this brass was seventeen and three-fourths cents per pound. At any rate, appellant had offered to purchase at this price. Upon that basis, the value of the brass unrecovered was $20,118.38. Interest upon this amount, from September 1, 1917, to July 13, 1921, amounted to $3,889.57, making the total amount of plaintiff's damages $24,007.95, instead of $48,349.35, as found by the jury. We therefore think that there should be a remittitur of the difference between $24,007.95 and $48,349.35, or $24,341.40.

The judgment of the circuit court is affirmed, provided plaintiff filed a remittitur of $24,341.40 within ten days from this date; otherwise the judgment is reversed and the case remanded.

*Affirmed on remittitur.*

BARNES, P. J., and GRIDLEY, J., concur.