(No. 23045 )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED N. WALKER, SR., Plaintiff in Error.

*Opinion filed October 24, 1935.*

JOSEPH LUSTFIELD, (ODE L. RANKIN, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and JOHN E. O'HORA, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Harry Lucas, Henry Rotloff, and the defendant, Fred N. Walker, Sr., were indicted in the criminal court of Cook county charged with the larceny of a washing machine of the value of $150, the property of the Taylor Washing Machine Company, hereinafter called the Taylor Company. Lucas and Rotloff were tried prior to Walker and found not guilty. The jury that tried Walker found him guilty, fixed the value of the machine at $25, and he was sentenced to the penitentiary. He brings the record here for review on writ of error.

The Taylor Company conducted six stores in Chicago. Its principal business was the sale of washing machines on conditional sales contracts, with payments on the installment plan. For about five years prior to April, 1933, the defendant was manager of the Taylor Company's collection department. In that capacity he had supervision of about 3000 accounts or contracts. The slow and bad accounts and the tracing of missing customers came to his immediate attention. The defendant spent practically each afternoon, and occasionally the forenoon, out of the office in the discharge of his duties. In those cases where the customer was moving from the State and had possession of a machine for which payment had not been fully made, and also in those instances where there were defaults in meeting payments at maturity and it was desired to re-possess the machine, the defendant, in the usual course of business, would make out an order to re-possess the machine on behalf of the company and submit the order to the president, Taylor, for his approval. Harry Lucas for about two years before the occurrence here in question operated a company in Chicago dealing in washing machines under the name of Lucas Washing Machine Company, hereinafter called the Lucas Company. Prior to that time he had been employed by the Taylor Company. He had known the defendant about six years. Henry Rotloff had been an employee of the Lucas Company for about two years. For about four years immediately previous thereto he had been an employee of the Taylor Company and had known the defendant about five years.

On October 10, 1931, the Taylor Company sold to Mrs. M. E. Paulson a washing machine, No. 29916, serial number 13581, under a conditional sales contract, reserving ownership and possession in the Taylor Company until paid for, at an agreed price of $182, payable in monthly installments. In March, 1933, Mrs. Paulson moved from Chicago to Michigan. She left the washing machine with

her landlady, Mrs. Lundin, telling her that the Taylor Company would call for it and requesting Mrs. Lundin to deliver to the company the machine when called for. The defendant received a telephone call which informed him that the machine was abandoned and in Mrs. Lundin's care. On the evening of that same day he stopped at the Lundin home, saw the machine and informed Mrs. Lundin he would arrange to have it picked up. There is a conflict in the evidence as to the date on which the defendant made the call. Mrs. Lundin fixed it as of March 8 while the defendant fixed it as of March 15. In our opinion the preponderance of the evidence establishes the date as of March 15. The next day the defendant saw Lucas at his place of business. The defendant testified that Lucas asked him if he knew of any washing machine on which there was a small balance and which could be re-possessed, as he had a customer who would pay $80 for such a machine. The defendant told Lucas of the Paulson machine and that there was $42 due on it; that the machine was an abandoned one, and that Lucas could get it if he would pay the balance owed. The record shows that there was actually due $74.08. The defendant stated that when he told Lucas the amount owed was $42 he believed that was the correct amount. At Lucas' request he gave Lucas Mrs. Lundin's street address. Lucas testified the defendant asked him if he wanted to buy a washing machine, and if so what he would give for it, to which Lucas replied he would have to see the machine, and the defendant gave the address where it was located, told him to pick it up, bring it in and see what it was worth. Rotloff stated that he heard the defendant ask Lucas if he would be interested in a washing machine, and heard the defendant give Lucas the address where the machine was located.

The evidence shows that Lucas gave Rotloff a written order dated March 16 to go out and pick up the machine.

Rotloff went to the Lundin address. Mrs. Lundin refused to surrender the machine to him until he signed a receipt therefor. Rotloff made out a receipt and signed the defendant's name thereto. The receipt bears no date. He said he did this at the direction of Lucas. Rotloff said that the pick-up order was made out the same day the defendant was at Lucas' place of business, and that after he got the machine he made a notation on the order showing he had gotten it and brought it into the store. Lucas did not attempt to fix the date of his conversation with the defendant other than to say it was some time in the early part of March, but did state that after talking to Walker on that occasion he gave the order to Rotloff and sent him to get the machine, and that Rotloff returned with it before noon on that same day. Lucas testified that two or three days after the machine was brought in he saw the defendant, told him the machine was worth $25, and paid him that amount. Rotloff said he saw Lucas pay the defendant some money. The defendant denied receiving any money from Lucas or that he sold the machine to him. The defendant testified that not having heard anything further from Lucas with reference to the proposed taking over of the machine by Lucas, on March 20 he made out a pick-up order for the machine, dated that day, giving the street address of Mrs. Lundin, with a notation to pick up the machine at once, and took the order to Taylor for his approval. The order was in evidence and bore the notation, "Washer abandoned; get key from lady on first floor." There is no conflict as to the date of the order or its contents nor when it was submitted to Taylor. Taylor did not approve the order but told the defendant that he wished to investigate the matter. On investigation Taylor found the machine had been taken by someone, and obtained from Mrs. Lundin the receipt Rotloff had given her to which the defendant's name had been signed.

On March 27 Taylor came into the defendant's office and asked him if he knew anything about the machine. The defendant said he did not. Taylor stated Mrs. Lundin had a receipt signed by the defendant for the machine. The defendant replied: "Well, Mr. Taylor, you know my handwriting; look at the receipt and see if it is in my handwriting." Taylor then admitted he did not think the signature was the defendant's. Thereafter Taylor compared the writing on the receipt with that of all of the Taylor Company's employees and former employees, found that the writing corresponded with that of Rotloff, and thereupon had Rotloff arrested. The defendant was discharged from the Taylor Company's service on April 8. The machine in question was re-painted and re-conditioned in the Lucas Company shop and then sent to the Mid-West Roll Company, which was one of the Lucas Company's dealers. The machine was later sold for $45 to Mrs. Willmanns. When recovered from Mrs. Willmanns it was discovered that the numbers on the machine had been filed or ground off.

Numerous errors are assigned and argued on the record, but in the view we take of the case it will be necessary to consider only one.

It is urged by the defendant that under the facts proved he, at most, was an accessory to the alleged larceny; that Lucas and Rotloff were the principals and have been acquitted, and that there can be no conviction of an accessory where the principal has been tried and found not guilty. The People contend that the theft of the machine was committed through Lucas and Rotloff, who were innocent agents of the defendant.

Generally speaking, the rule is that where a criminal act is committed through the instrumentality of an innocent agent, the person who induced the act is a principal although not present when the act was committed. (*Aldrich* v. *People*, 224 Ill. 622; *Commonwealth* v. *Barry*,

125 Mass. 390; *State* v. *Bailey*, 63 W. Va. 668, 60 S. E. 785; 1 Bishop on New Crim. Law, secs. 649, 651; 36 Corpus Juris, par. 213, p. 797.) That rule of law, under the facts here, has no application. Possession of the machine was taken by Lucas through his employee, Rotloff. The deliberate removal of the serial numbers clearly manifested an evil intent on the part of some person to destroy the identity of the machine in question. The defendant never had that opportunity; his co-defendants did. The rule relied upon by the People requires that where proof of the asportation is relied upon as being made through an agent, the agent must be free from criminal taint in the commission of the alleged offense. There can be no larceny without an asportation by the thief. (2 Bishop on Crim. Law, sec. 794.) The record conclusively establishes the fact that the machine never came into the possession of the defendant. Our statute on accessories states: "An accessory is he who stands by, and aids, abets or assists, or who, not being present, aiding, abetting or assisting, hath advised, encouraged, aided or abetted the perpetration of the crime. He who thus aids, abets, assists, advises or encourages, shall be considered as principal, and punished accordingly." (Cahill's Stat. 1933, chap. 38, par. 611, p. 1068; Smith's Stat. 1933, par. 582, p. 1080.) And an accessory before the fact should be indicted as a principal. *Usselton* v. *People*, 149 Ill. 612; *Spies* v. *People*, 122 id. 1.

The facts developed by the record show that the defendant here, if guilty, is guilty as an accessory before the fact although properly indicted as a principal. In those States where the statute has abolished the distinction between principal and accessory before the fact and such accessories are called and punished as principals, it is still necessary to apply the common law rules in order to determine whether persons who are absent when the crime is committed are guilty as principals under the statute, and even if the offense of the accessory is distinct from that

of the principal, yet it cannot subsist without someone being guilty as principal. (16 Corpus Juris, secs. 125, 127.) There can be no accessory without a guilty principal. (1 Bishop on Crim. Law, sec. 666.) The parties who actually took the machine and disposed of it having been charged with this theft and found not guilty of larceny, the defendant cannot be convicted without the crime having been fixed on some definite person. It follows as a matter of law that the guilt of the defendant of the offense charged has not been established.

The judgment of the criminal court is reversed.

*Judgment reversed.*