[Crim. No. 16605. In Bank. Oct. 30, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ALVIN TAYLOR, Defendant and Appellant.

**688**

[redacted]

## COUNSEL

James L. Rankin, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Herbert L. Ashby, Chief Assistant Attorneys General, William E. James, Assistant Attorney General, W. Eric Collins, Eugene Kaster and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant Alvin Taylor appeals from a judgment upon jury convictions of the murder (Pen. Code, § 187) of John H. Smith, one of the individuals who, with defendant, perpetrated a robbery of Jack West and of the robbery (Pen. Code, § 211) of said Jack West.[1] Both crimes were found in the first degree and, upon stipulation, the penalty on the murder count was fixed at life imprisonment.[2]

---

[1] Unless otherwise stated, all statutory references are to sections of the Penal Code.

[2] Defendant was initially charged by information with codefendant James Daniels. In addition to those crimes for which defendant was subsequently convicted he was also charged with Daniels with one count of burglary (§ 459) and two counts of assault with a deadly weapon with intent to commit murder (§ 217). The original

Defendant contends: (1) that the evidence is insufficient to support the murder conviction; (2) that in connection with the murder conviction he was improperly limited in his cross-examination of a key prosecution witness relative to the issue of malice; (3) that his proposed instruction on malice was improperly rejected; and (4) that the murder conviction is barred by application of the doctrine of collateral estoppel based on the prior acquittal of his confederate, James Daniels, of the same charge. We agree with defendant's fourth contention and reverse the judgment as to the murder conviction. As will appear, defendant's guilt, if any, of the murder charge is vicarious and can be predicated only on the guilty conduct of his confederates. Since the People failed to establish such guilty conduct at Daniels' trial, they are now barred from relitigating that identical issue.

By reason of our reversal of the judgment as to the conviction of murder, it is not necessary for us to discuss in this opinion the first three issues presented by defendant as the same are applicable only to the charge of murder. It is necessary, however, to set forth in some detail the evidence adduced at the trial as it relates to that offense in order to permit full consideration to the fourth contention of defendant, the issue of collateral estoppel.

The record now before us discloses that defendant, James Daniels and John H. Smith planned to commit robbery in the nighttime at a liquor store operated by Jack and Linda West. Defendant remained in the getaway car as Daniels and Smith approached the store. Daniels went inside where he was recognized by the Wests as having been in the store on a previous occasion. He approached Mr. West at the cash register and asked for a package of cigarettes. Smith entered the store at about this time and was standing across the counter from the cash register to the right of Daniels when Mr. West returned with the requested item. Daniels then stated, "This is a hold up." At this time Smith was holding a gun in his right hand and was pointing it at Mr. West.

---

information also charged that defendant had suffered one prior California conviction of a felony (burglary, 1965) and five prior Alabama convictions of felonies (burglary, grand larceny, receiving stolen property). Defendant unsuccessfully moved to set aside the information as to the murder count (§ 995) and we thereafter denied his petition for a writ of prohibition. (*Taylor* v. *Superior Court* (1970) 3 Cal.3d 578 [91 Cal.Rptr. 275, 477 P.2d 131], hereinafter referred to as *Taylor I.*)

Following our decision in *Taylor I* the information was amended. Defendant was separately charged and all counts were dropped other than the murder and robbery counts upon which he was subsequently convicted. Of the prior convictions charged only the California burglary conviction and a 1961 Alabama grand larceny conviction were retained. Defendant admitted such prior convictions after unsuccessfully moving for the dismissal of the Alabama conviction on constitutional grounds.

Mrs. West was standing with her back to the counter on a step ladder almost directly behind her husband. At trial she testified that both of the robbers appeared to be excited and nervous.[3] After demanding and receiving the contents of the cash register, Daniels ordered Mr. West on two, three or perhaps more occasions "to get down on the floor." As Mr. West lowered himself to the floor, Daniels commanded, "On your stomach, on your stomach, *or we'll have an execution right here.*" (Italics added.) Smith then moved the gun to a position over the cash register and continued to aim it at Mr. West as he slowly approached a reclining position. The statement relative to an execution was repeated "perhaps two or three times." At this juncture "things were getting pretty fast" and Mrs. West "knew they were going to kill" her husband.

Mr. West testified that after he had delivered the contents of the cash register to Daniels the situation was such that he feared for his life. Although it was Daniels who generally gave the orders, Mr. West watched "the guy [Smith] that was shaking the gun at me." "Daniels kept wanting me to get down on my stomach, turn over and he said he was going to kill me if I didn't, and Smith was ·. . . kept pointing the gun at me." Smith would sometimes "back up Daniels by saying *'I will kill you,' and when I was on the floor they were going to execute me or something.*" (Italics added.) As Mr. West approached a supine position Daniels "was telling the other one to watch me, watch me, because I had a pistol in my pocket."

During the course of the foregoing event Mrs. West had stepped off the ladder and stood behind her husband. Tucked under her waist band, she was carrying a hand gun which was concealed by the loose blouse she was wearing. She turned, pulled the gun and fired four shots in rapid succession. Smith was hit and spun away but managed to fire back at Mrs. West. Mr. West then crawled along the floor to the end of the counter and observed Smith taking aim at Mrs. West. Mr. West fired his gun twice at Smith, who fell to the floor mortally wounded. Daniels fled from the store as Mrs. West fired at him.[4]

We held in *Taylor I* that on the record presented the felony-murder doctrine was inapplicable (see *People* v. *Washington* (1965) 62 Cal.2d 777,

---

[3] Mrs. West described the condition of Daniels and Smith as "excited." She testified additionally that "Daniels kept telling my husband to hurry up, hurry up and put the money in the bag, hurry up." Daniels also repeated various other directions, hereinafter noted, in rapid succession.

[4] Mrs. West's account of events leading up to the gun battle was substantially the same on direct and cross-examination. She stated during the latter that she assumed Smith "would use the gun because of the language they used" and that she fired her gun "because they would have killed my husband."

781 [44 Cal.Rptr. 442, 402 P.2d 130]), but that defendant might nevertheless be found guilty on a theory of vicarious liability if it independently appeared that his confederates entertained malice aforethought (see *People* v. *Gilbert* (1965) 63 Cal.2d 690, 704-705 [47 Cal.Rptr. 909, 408 P.2d 365] (revd. on other grounds, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951])). In considering whether an accomplice of a robber who threatens his intended victim with a gun may be deemed to have acted with malice, that is, with "conscious disregard for human life, the natural consequences of which were dangerous to life," the majority stated that the test was satisfied when a fatal gun battle was "initiated by acts of provocation falling short of firing the first shot." (*Taylor* v. *Superior Court, supra,* 3 Cal.3d 578, 584.) We also held in *Taylor I* that if on trial "the trier of fact concludes that under the particular circumstances of the instant case Smith's death proximately resulted from acts of petitioner's accomplices done with conscious disregard for human life, the natural consequences of which were dangerous to life, then petitioner may be convicted of first degree murder." (*Id.,* at p. 583.)

While *Taylor I* was pending in this court Daniels was separately tried and convicted of the robbery but was acquitted of the murder charge. Since defendant was sitting in the getaway car outside the store at the time of the shooting, his subsequent conviction for murder could result only upon a finding that one of his confederates, Daniels or Smith, harbored malice which the trier of fact then attributed to defendant because of his role as an aider and abettor. (See § 31.) At Daniels' trial the People already have sought and have failed to establish that either Daniels or Smith entertained the requisite malice aforethought. Defendant thus argues that the doctrine of collateral estoppel should have precluded the People from relitigating this identical issue at his later trial.[5] We agree.

Collateral estoppel has been held to bar relitigation of an issue decided at a previous trial if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439], cert. den., 372 U.S. 966 [10 L.Ed.2d 130, 83 S.Ct. 1091]; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].) The first two of these requirements are fully satisfied in the instant case. The question of whether the

---

[5] Although defendant did not raise the plea of collateral estoppel at trial, he should not be faulted for failing to do so since it does not appear that there were then any controlling precedents in California on the issue raised by such a plea.

conduct of Daniels or Smith was sufficiently provocative to support a finding of implied malice was resolved adversely to the People in Daniels' trial, and the People have sought to relitigate the identical issue in these proceedings. Daniels' acquittal was a final judgment on the merits.

As to the third requirement of identity of parties, it is the rule in civil cases that the party benefitting from collateral estoppel need not have been a party in the prior trial so long as the party bound by the doctrine was such a party. Mutuality is thus not required. (*Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 811-813; see *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 604-607.)

In criminal cases the bar of collateral estoppel is constitutionally compelled when the same defendant was involved in both trials. (*Ashe* v. *Swenson* (1970) 397 U.S. 436, 443-447 [25 L.Ed.2d 469, 475-477, 90 S.Ct. 1189].) However, courts have sometimes declined to apply the doctrine in behalf of a criminal defendant who was not involved in the prior trial. (See *Woodford* v. *Municipal Court* (1974) 37 Cal.App.3d 874, 877-878 [112 Cal.Rptr. 773]; *People* v. *Uptgraft* (1970) 8 Cal.App.3d Supp. 1, 9-10 [87 Cal.Rptr. 459], cert. den., 400 U.S. 911 [27 L.Ed.2d 151, 91 S.Ct. 152].) Defendant argues that notwithstanding the lack of identity of the parties defendant, the state should be barred by the doctrine when in proceeding against an accused it must rely *vicariously* on a factual determination which was rejected by the trier of fact at a prior trial of a perpetrator of the identical crime charged against him. That factual determination, in the instant case a finding as to the existence of malice on the part of Daniels or Smith, is the precise determination which was rejected by the acquittal of Daniels of the charge of murder.

We have failed to discover any controlling precedents on this issue. Although some cases contain dicta unfavorable to defendant's position, they are readily distinguishable. These cases (1) involved situations in which the basic requirements of collateral estoppel were not satisfied because identity of the issue was lacking[6] or because there was no prior final judgment on

---

[6] In these cases, the accused's conviction was not based solely on the acts of his acquitted confederate because (1) the accused himself was on the scene of the crime and actively engaged in its commission (*People* v. *Scoglio* (1969) 3 Cal.App.3d 1, 3-5 [82 Cal.Rptr. 869]; see *People* v. *Stone* (1963) 213 Cal.App.2d 260, 262-265 [28 Cal. Rptr. 522]; *People* v. *Gutierrez* (1962) 207 Cal.App.2d 529, 530-531 [24 Cal.Rptr. 441]) or (2) the accomplice was acquitted because of the lack of a culpable mental state for reasons personal only to the accomplice (*People* v. *Collins* (1966) 242 Cal. App.2d 626, 635-636 [51 Cal.Rptr. 604]—lack of criminal intent by reason of deception practiced by the accused; see *People* v. *Hernandez* (1971) 18 Cal.App.3d 651, 657 [96 Cal.Rptr. 71]—duress induced by the accused; *People* v. *Massie* (1953) 122 Cal.App.2d 235, 236 [264 P.2d 671]—lack of criminal intent because of intoxication).

the merits as to the alleged perpetrators,[7] or (2) involved joint trials which failed to raise the issue of collateral estoppel;[8] or (3) did not involve the question of an accused's vicarious liability for the acts of a previously acquitted perpetrator.[9]

The reported cases in other jurisdictions are divided on the question of whether an accused may be convicted by holding him vicariously responsible for the acts of a previously acquitted accomplice.

Some jurisdictions apply the defense of collateral estoppel in these circumstances, primarily to avoid the inconsistency and apparent unfairness of holding the accused liable for a crime which a previous adjudication has determined was not committed. (*People* v. *Walker* (1935) 361 Ill. 482, 487-488 [198 N.E. 353]; *State* v. *St. Philip* (1929) 169 La. 468, 472-474 [125 So. 451]; see *Shuttlesworth* v. *Birmingham* (1963) 373 U.S. 262, 265-266 [10 L.Ed.2d 335, 337, 83 S.Ct. 1130].) Such distaste for inconsistent verdicts has caused the conviction of an aider and abettor to be vacated when the perpetrator is subsequently acquitted in a separate trial (*United States* v. *Prince* (4th Cir. 1970) 430 F.2d 1324, 1325; see *United States* v. *Smith* (1973) 478 F.2d 976, 979 [156 App.D.C. 66]; *United States* v. *Shuford* (4th Cir. 1971) 454 F.2d 772, 779; *State* v. *Spencer* (1973) 18 N.C. App. 499 [197 S.E.2d 232]) or is later convicted of a lesser offense than the aider and abettor (*Schmidt* v. *State* (Ind. 1973) 300 N.E.2d 86, 87-88).[10]

[7]In these cases there was no final judgment of acquittal on the merits as to the alleged perpetrators because (1) at least one of the alleged perpetrators was convicted of the same crime for which the accused was later prosecuted (*People* v. *Newberry* (1862) 20 Cal. 439, 440-441; *People* v. *Bearss* (1858) 10 Cal. 68, 69-70; and *People* v. *Collins, supra,* 242 Cal.App.2d 626, 633-634) or (2) the perpetrator pleaded guilty to a lesser related offense than that with which the accused was charged (*People* v. *Griffith* (1960) 181 Cal.App.2d 715, 719 [5 Cal.Rptr. 620]; *People* v. *Simpson* (1944) 66 Cal.App.2d 319, 321-322, 329 [152 P.2d 339]).

[8]One of these cases held that an accused could not be convicted as an aider and abettor when the perpetrator was acquitted in the same trial, although there is dicta that such a result would not be sanctioned if the two had been tried separately (*People* v. *Allsip* (1969) 268 Cal.App.2d 830, 831-832 [74 Cal.Rptr. 550]). Other cases hold that an accused, as an aider and abettor, may be convicted of a lesser crime than the perpetrator when they are tried together. (*People* v. *Braun* (1973) 29 Cal.App.3d 949, 973-974 [106 Cal.Rptr. 56]; *People* v. *Finch* (1963) 213 Cal.App.2d 752, 777 [29 Cal.Rptr. 420]; and *People* v. *Blackwood* (1939) 35 Cal.App.2d 728, 732-733 [96 P.2d 982].)

[9]*Woodford* v. *Municipal Court, supra,* 37 Cal.App.3d 874, 877-878, and *People* v. *Seltzer* (1972) 25 Cal.App.3d Supp. 52, 54-57 [101 Cal.Rptr. 260], involved the obscenity of a book or film which might bear on the criminal liability of other persons not confederates of those accused; *People* v. *Uptgraft, supra,* 8 Cal.App.3d Supp. 1, 9-10 (cert. den., 400 U.S. 911) involved the legality of a ban on public assemblies on a university campus recently wracked by violence.

[10]Other jurisdictions have rejected the defense of collateral estoppel in a situation similar to the instant case thereby permitting conviction of an aider and abettor based

Although as stated there are no controlling cases on point there are nevertheless persuasive related cases which favor the application of collateral estoppel to foreclose the conviction of an accused based on his vicarious responsibility for the acts of a previously acquitted confederate.

■ It is settled that a defense judgment in a tort action will bar the plaintiff from relitigating the issue of the defendant's negligence in a subsequent suit against the defendant's employer based solely on a *respondeat superior* theory. (*Barrabee* v. *Crescenta Mutual Water Co.* (1948) 88 Cal. App.2d 192, 195-197 [198 P.2d 558]; see also *Bradley* v. *Rosenthal* (1908) 154 Cal. 420, 426-427 [97 P. 875]; *Hendriksen* v. *Young Men's Christian Assn.* (1959) 173 Cal.App.2d 764, 769-770 [344 P.2d 77]; *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 812.) Additionally, when a verdict against an employee is reversed on appeal, a judgment against the employer based on the doctrine of *respondeat superior* must be vacated (*Bird* v. *McGuire* (1963) 216 Cal.App.2d 702, 718-719 [31 Cal.Rptr. 386]), and the subsequent exoneration of the employer in a suit based solely on the employee's negligence requires vacating a default judgment previously entered against the employee (*Adams Mfg. & Engineering Co.* v. *Coast Centerless Grinding Co.* (1960) 184 Cal.App.2d 649, 655-657 [7 Cal.Rptr. 761]).

An application of the doctrine of collateral estoppel similar to that in civil tort cases involving vicarious liability also has been made in criminal conspiracy cases which, like the instant case, involve criminal responsibility for other than purely unilateral conduct. ■ Since a criminal conspiracy requires the participation of two or more conspirators, a conviction necessarily involves a finding that another person conspired with the accused. The courts also have applied the doctrine to preclude the conviction

solely on the acts of a previously acquitted accomplice (*United States* v. *Musgrave* (5th Cir. 1973) 483 F.2d 327, 331-333, cert. den. sub. nom. *Musgrave* v. *United States,* 414 U.S. 1023 [38 L.Ed.2d 315, 94 S.Ct. 447]; *State* v. *Cunha* (Iowa 1971) 193 N.W.2d 106, 109; *Rush* v. *State* (1965) 239 Ark. 878, 879-881 [395 S.W.2d 3]; *State* v. *Hess* (1939) 233 Wis. 4, 7-9 [288 N.W. 275]; *Roberts* v. *People* (1938) 103 Colo. 250, 256-261 [87 P.2d 251]; *Christie* v. *Commonwealth* (1922) 193 Ky. 799, 801 [237 S.W. 660, 24 A.L.R. 599]; see also *Cummings* v. *Commonwealth* (1927) 221 Ky. 301, 313 [298 S.W. 943]).

Other out-of-state cases containing dicta rejecting the doctrine of collateral estoppel are distinguishable for reasons similar to those discussed in footnotes 6 through 9, *supra.* (See *People* v. *Jones* (Colo. 1974) 518 P.2d 819, 821-822; *State* v. *Young* (Iowa 1973) 211 N.W.2d 352, 353-354; *State* v. *Haines* (W. Va. 1972) 192 S.E.2d 879, 882; *United States* v. *Azadian* (9th Cir. 1971) 436 F.2d 81, 82-83; *Pigman* v. *United States* (8th Cir. 1969) 407 F.2d 237, 239; *Cody* v. *State* (Okla. Crim. 1961) 361 P.2d 307, 318-319; *State* v. *Thompkins* (1951) 220 S.C. 523, 524-525, 527-528 [68 S.E.2d 465]; *State* v. *Wilson* (1945) 236 Iowa 429, 444-445 [19 N.W.2d 232].)

of an alleged conspirator when all other alleged coconspirators have been acquitted (see *People* v. *Reeves* (1967) 250 Cal.App.2d 490, 493-494 [58 Cal.Rptr. 517]) or the charges against all the other coconspirators have been dismissed because of insufficient evidence (see *People* v. *James* (1961) 189 Cal.App.2d 14, 16-17 [10 Cal.Rptr. 809, 91 A.L.R.2d 697]). The courts have thus refused to uphold the conviction of a sole remaining conspirator as he could be convicted only through a finding that at least one of the previously acquitted coconspirators had, in fact, engaged in a conspiracy. (See also *United States* v. *Bruno* (E.D.Pa. 1971) 333 F.Supp. 570.)[11]

There are strong policy considerations which, in addition to the holdings in related cases, favor application of the doctrine in the instant circumstances. ■ We deem the purposes of an application of the doctrine to be: (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. (See 46 So.Cal.L.Rev. 922, 940-954 (1973).) ■ In deciding whether the doctrine is applicable in a particular situation a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co. Ltd., supra*, 58 Cal.2d 601, 605.)

The need for judicial economy by minimizing repetetive litigation is even more important in criminal than in civil trials. Crowded court dockets inevitably will impose a heavy burden on criminal defendants as substantial periods of incarceration may result while they await trial, and long delays between arrest and sentencing will decrease the effectiveness of the punishment which is ultimately meted out. (46 So.Cal.L.Rev. 922, 941-942 (1973).) Although the saving of the resources of the court system may be somewhat reduced when, in addition to the crime against which a plea of collateral estoppel is urged, other crimes must also be litigated, the other goals of an application of the doctrine can nevertheless be achieved.

Perhaps the most compelling reason for an application of collateral estoppel where vicarious liability is at issue is to prevent the compromising of the integrity of the judicial system caused by the rendering of incon-

---

[11]Although the conviction of a single person for conspiracy has been upheld when the other alleged coconspirators have not yet been tried (*People* v. *Roy* (1967) 251 Cal.App.2d 459, 463 [59 Cal.Rptr. 636]; see also *People* v. *Sagehorn* (1956) 140 Cal. App.2d 138, 146 [294 P.2d 1062]), or have been subsequently acquitted (*People* v. *Holzer* (1972) 25 Cal.App.3d 456, 459 [102 Cal.Rptr. 11]), such situations are readily distinguishable from the situation presented for the invocation of collateral estoppel when all the alleged coconspirators have been previously acquitted.

sistent verdicts. Criminal trials generally receive more publicity than civil ones, and the public's view of the judicial system in general is often shaped by the impression of the fairness of the criminal justice system in particular. (See 46 So.Cal.L.Rev. 922, 950 (1973).) Few things undermine the layman's faith in the integrity of our legal institutions more than the specter of a system which results in a person being punished for the acts of another, when the actor himself under identical charges had been previously exonerated from responsibility for those very acts. This is particularly so under the facts of the instant case when the People seek to punish defendant, who was not even present on the immediate scene, for the death of an accomplice caused by the acts of another confederate who himself has been exonerated.

Although the third purpose of collateral estoppel, preventing harassment through vexatious litigation, does not appear to be fulfilled if the doctrine is applied when different defendants are tried but once in separate trials, the other general purposes of an application of the doctrine are as readily achievable in criminal as in civil trials and, as will be seen, the reasons for its greater limitation in criminal proceedings fail to justify the refusal to apply it in the instant circumstances.

 ██ ██ In the past some courts have refused to dispense with identity of parties as a requirement for application of the doctrine of collateral estoppel, because of (1) difficulty of identifying the issues resolved against the People in the prior trial (see *People* v. *Collins, supra,* 242 Cal. App.2d 626, 634); (2) unfairness of binding the state when the defendant is not also bound by the first trial (see *Roberts* v. *People, supra,* 103 Colo. 250, 258-259; see also *People* v. *Seltzer, supra,* 25 Cal.App.3d Supp. 52, 55); or (3) undesirability of multiplying the results of a possibly erroneous verdict of acquittal (see *People* v. *Uptgraft, supra,* 8 Cal.App.3d Supp. 1, 9-10; *United States* v. *Musgrave, supra,* 483 F.2d 327, 331-332; and *Roberts* v. *People, supra,* 103 Colo. 250, 257).[12] None of these considerations, however, is applicable in the instant situation.

---

[12]The high burden of proof required for a criminal conviction has influenced some courts to hesitate to relax the identity-of-parties requirement for collateral estoppel in criminal cases. Such courts assert that the prior judgment of acquittal merely means that the crime was not proved beyond a reasonable doubt, not that the alleged perpetrator and therefore the accused are innocent. (See *United States* v. *Musgrave, supra,* 483 F.2d 327, 332; *Roberts* v. *People, supra,* 103 Colo. 250, 257, 261.) Such reasoning is not convincing. As is the case in civil litigation where identity of parties is not a prerequisite to the invocation of collateral estoppel (see *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 811-813), the burden of proof in a subsequent criminal trial is the same as the burden of proof in the previous criminal trial upon which the plea of collateral estoppel is based. Moreover, the previous acquittal of the perpetrator should create a reasonable doubt about his guilt thereby raising a reasonable doubt about the guilt of an alleged aider and abettor when his guilt is based solely on acts of the alleged perpetrator.

Where, as here, the accused's guilt is predicated only on vicarious liability, identity of issues is clear. Since defendant was outside the store in the getaway car at the time of the shooting, defendant's murder conviction can be based only on his being held responsible for Daniels' or Smith's conduct which must be vicariously attributed to defendant. There is no indication that Daniels' acquittal is based on anything other than a final determination that his and Smith's acts were not sufficiently provocative to support a finding of implied malice.[13]

As to the second of the reasons for reluctance to retreat from the requirement of identity of parties, it does not appear that the defense of collateral estoppel in defendant's case would result in any unfairness to the prosecution. At Daniels' murder trial the People had both the incentive and opportunity to litigate fully the issue of the provocativeness of the conduct of Daniels and Smith as Daniels appeared to be the leader in the robbery which resulted in the shootout. Furthermore, defendant appears to have played a minor role in the events leading to the death of Smith and there is no evidence that defendant directed or instigated the holdup of the liquor store.[14]

There is little support for the People's contention that relaxing the identity-of-parties requirement is unfair as it gives defendant two chances for exoneration, either through the prior acquittal of the perpetrator or through his own acquittal if the perpetrator should be convicted. We have rejected similar arguments in civil cases where we held that there is little real inequity in permitting strangers to take advantage of prior judgments where the party adversely affected had every motive and opportunity to litigate the matter fully in the prior trial. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 606-607.) We note further that Daniels' acquittal affects only the case against defendant and therefore this is not a situation in which collateral estoppel may affect many potential defendants.[15]

---

[13]We note that Daniels did not offer a defense such as insanity, intoxication, or duress based on his personal lack of culpability irrespective of the criminality of his acts.

[14]We do not reach the question of whether the doctrine of collateral estoppel should be applied to bar the prosecution of a person who directed, instigated or participated in a crime for which the perpetrators were acquitted.

[15]We thus do not reach the question of whether the doctrine should be applied where the issue decided in the previous trial may affect many persons whose criminal liability is not based solely on the acts of the previously acquitted defendant. (Cf. *Woodford* v. *Municipal Court, supra,* 37 Cal.App.3d 874, 877-878; *People* v. *Seltzer, supra,* 25 Cal.App.3d Supp. 52, 55; and *People* v. *Uptgraft, supra,* 8 Cal.App.3d Supp. 1, 9-10, cert. den., 400 U.S. 911.)

It is unlikely that the application of the doctrine of collateral estoppel to the case at bar will result in spreading the effects of a possibly erroneous acquittal, the third of the reasons urged for not relaxing the identity-of-parties requirement. Contrary to the contention of the People the inconsistency in the results of Daniels' trial and defendant's trial cannot be explained by differences in evidence[16] or jury instructions.[17] The description of Daniels' conduct given by the prosecution witnesses was substantially the same in both trials. Although Daniels disputed the People's version of the events in the store while defendant did not,[18] Daniels' conviction of robbery reveals that the jury did not believe his account of the occurrences in the liquor store. Although defendant was exposed in a fabrication in his testimony and was forced to admit that he lied during some of his pretrial statements, Daniels likewise was caught in a falsehood during his trial and was also compelled to reveal that he had lied to investigators. Similarly, there is no significant difference in the instructions on malice given in the two trials. Both set out the standard that a finding of implied malice must be supported by a determination that the conduct in question involved a high risk of death and must be done with a conscious disregard for life.

We conclude that the lack of identity of parties defendant does not preclude the application of the doctrine of collateral estoppel; we limit today's holding to the particular circumstances of the instant case where an accused's guilt must be predicated on his vicarious liability for the acts of a previously acquited confederate.

The judgment is reversed as to the conviction of murder and affirmed as to the conviction of robbery.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

---

[16]This case therefore does not present the issue of whether and under what circumstances the prosecution's discovery of new evidence after the first trial will preclude a plea of collateral estoppel which otherwise may have been valid. (See *United States* v. *Musgrave, supra,* 483 F.2d 327, 332; see also *People* v. *Uptgraft, supra,* 8 Cal.App.3d Supp. 1, 9-10.)

[17]As the prosecution does not contend there were legal errors concerning matters other than jury instructions committed at Daniels' trial, we do not reach the question of whether the bar of collateral estoppel is applicable when the People allege that the prior verdict of acquittal was based on erroneous rulings which they were unable to correct through appellate review. (See Pen. Code, § 1238.)

[18]Daniels claimed he was an innocent bystander, did not participate in the robbery, and did not make the remarks attributed to him by the prosecution witnesses. Defendant, relying on alibi, denied any knowledge of the transactions in the store, and therefore did not dispute the Wests' description of Daniels' conduct.