Filed 4/3/25  P. v. Blaney CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083910 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD146542) |
| RANDY SCOTT BLANEY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Seth M. Friedman, and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

In 2000, a San Diego jury found Randy Scott Blaney guilty of the first degree murder of Christopher Englebrecht and the attempted murder of E.S. In 2023, after the enactment of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (hereafter, Senate Bill 1437), Blaney petitioned to have his convictions vacated and to be resentenced under Penal Code section 1172.6.[1] The trial court summarily denied the petition at the prima facie stage, reasoning the record of conviction precluded relief as a matter of law. We agree. Therefore, we affirm the denial order.

# II

## BACKGROUND

A. *The Shooting and Trial*[2]

On July 14, 1999, Blaney and Englebrecht decided to rob E.S., a pedestrian they encountered near the U.S.–Mexico border. Englebrecht pointed a gun at E.S. and demanded his money, but E.S. fought back and took the gun. Blaney fired two shots at E.S. with his own gun. E.S. returned fire and fatally struck Englebrecht.

On October 31, 2000, a jury found Blaney guilty of the first degree murder of Englebrecht (§ 187, subd. (a); count 1); the attempted murder of E.S. (§§ 187, subd. (a), 664; count 2); assault with a semiautomatic firearm (§ 245, subd. (b); count 3); conspiracy to commit a crime (§ 182, subd. (a)(1); count 4); attempted robbery (§§ 211, 664; count 5); possession of a firearm by

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    This summary of facts is intended for background purposes only and does not factor into our analysis of the trial court's summary denial order.

a felon (former § 12021, subd. (a)(1); count 6); and the unlawful driving of a vehicle (Veh. Code, § 10851, subd. (a); count 7).

The jury found true a special circumstance allegation that Blaney committed the murder while engaged in the attempted commission of a robbery (§ 190.2, subd. (a)(17)). It returned true findings on allegations that he intentionally and personally discharged a firearm in the commission of the murder, attempted murder, and attempted robbery (§ 12022.53, subd. (c)). Further, it returned true findings on allegations that he personally used a firearm in the commission of the murder, attempted murder, assault with a semiautomatic firearm, conspiracy, and attempted robbery (§ 12022.5, subd. (a)(1)), and that he was armed with a firearm when he unlawfully drove a vehicle (§ 12022, subd. (a)(1)). Blaney admitted a prison prior allegation (former § 667.5, subd. (b)), and the trial court sentenced him to prison for life without the possibility of parole, plus 20 years.

On direct appeal, our court struck a restitution fine, but otherwise affirmed the judgment of conviction. (*People v. Blaney* (July 29, 2002, D037113) [nonpub. opn.].)

B. *Senate Bill 1437*

In 2018, the Legislature passed Senate Bill 1437, which went into effect January 1, 2019. The Legislature approved the bill for the expressed purpose of ensuring more equitable sentencing for "offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b).) As the bill's uncodified findings and declarations explain, "It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (*Id.*, § 1(d).)

"Senate Bill 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-

3

murder rule by adding section 189, subdivision (e) to the Penal Code. (Stats. 2018, ch. 1015, § 3.) Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine. [Citation.] '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*Curiel, supra*, 15 Cal.5th at p. 449.) Thus, under state law as it existed prior to the enactment of Senate Bill 1437, "a defendant who aided and abetted an intended [crime] could be liable for murder, if the murder was the natural and probable consequence of the intended [crime]. [Citation.] The defendant need not

4

have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime." (*Ibid.*)

"Senate Bill 1437 also enacted former section 1170.95, which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Thereafter, the Legislature enacted Senate Bill No. 775, which ensured "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1(a).) "[F]ormer section 1170.95 was renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.)" (*Curiel*, at p. 449.)

Under section 1172.6, a petitioner initiates the resentencing process by filing a declaration averring that: (1) a charging document was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder, natural and probable consequences murder, murder under another theory by which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not presently be convicted of murder or attempted murder because of the statutory amendments that were implemented by Senate Bill 1437. (§ 1172.6, subds. (a)(1)–(3), (b)(1).)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the

5

petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*), quoting § 1172.6, subd. (c).) The prima facie inquiry is a "limited" one. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*) Unless the parties waive a resentencing hearing and stipulate the petitioner is entitled to the relief sought, the court must then schedule an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).)

At the prima facie review stage, "a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 972; see *Strong, supra*, 13 Cal.5th at p. 720 ["factfinding [is] prohibited at the prima facie stage"].) " 'However, if the record [of conviction], including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971.) In other words, a court should deny a resentencing petition at the prima facie stage, without issuing an order to show cause, "if the record of conviction conclusively establishes that the

petitioner is ineligible for relief as a matter of law." (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.)[3]

C. *The Resentencing Petitions*

In 2019, Blaney filed a petition to have his murder conviction vacated and to be resentenced under former section 1170.95. The trial court denied the petition at the prima facie stage and our court affirmed the denial order. (*People v. Blaney* (July 29, 2021, D077935) [nonpub. opn.].) We determined the record of conviction showed Blaney was found guilty of provocative act murder as the provocateur—i.e., the jury necessarily found Blaney did an unlawful act likely to cause a police officer or victim to respond with deadly force, which caused the death of another, and he personally acted with malice. (*Ibid.*) Thus, we reasoned, the record of conviction conclusively showed Blaney could be found guilty of murder under current law. (*Ibid.*)

In 2023, Blaney filed a second petition for resentencing.[4] Once more, the trial court denied the petition at the prima facie stage. The court found Blaney ineligible for relief as a matter of law because the jury found him guilty of murder as the "direct perpetrator under the provocative act murder theory." Further, although the parties focused much of their attention on Blaney's request to vacate his murder conviction, the court also denied the petition insofar as it sought vacatur of the attempted murder conviction.

Blaney filed a timely notice of appeal from the summary denial order.

---

[3]    In general, the record of conviction includes the charging documents, the plea form or verdict forms, the jury instructions, and the parties' closing arguments. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1247, fn. 3; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)

[4]    The People do not argue on appeal that Blaney is procedurally barred or collaterally estopped from filing a successive petition for resentencing. Therefore, we express no opinion on these issues.

7

## III

## DISCUSSION

A. *The Trial Court Correctly Declined to Vacate the Murder Conviction*

Blaney claims we must reverse the order denying the petition to vacate his murder conviction because the record of conviction does not conclusively prove he remains guilty of murder under sections 188 and 189, as amended by Senate Bill 1437. In particular, he argues the jury may have found him guilty of murder by imputing malice to him based solely on his participation in a crime, which is not permissible under current law. For reasons we shall explain, we reject Blaney's assertion that the jury might have found him guilty of murder by imputing malice to him.

It is undisputed by the parties—and the record of conviction confirms— that Blaney was found guilty of Englebrecht's murder under the provocative act doctrine. " 'A provocative act murder case necessarily involves at least three people—in our case, the perpetrator of the underlying offense, an accomplice, and a victim of their crime. [Citation.]' [Citation.] A variation on the law of transferred intent, the provocative act doctrine holds the perpetrator of a violent crime vicariously liable for the killing of an accomplice by a third party, usually the intended victim or a police officer." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654 (*Gonzalez*), superseded in part by statute as explained in *People v. Wilson* (2023) 14 Cal.5th 839, 868–869.) " 'In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.' " (*Gonzalez*, at p. 655.)

A murder conviction under the provocative act doctrine, as it is understood today, "requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice

8

intentionally committed a provocative act that proximately caused an unlawful killing. [Citations.] A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response. [Citations.] Although the doctrine has often been invoked in cases where the defendant initiates or participates in a gun battle [citation], it is not limited to this factual scenario. [Citations.] Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*Gonzalez, supra*, 54 Cal.4th at p. 655; see *People v. Mejia* (2012) 211 Cal.App.4th 586, 603 ["With respect to the mental element of provocative act murder, a defendant cannot be vicariously liable; he must personally possess the requisite mental state of malice aforethought when he either causes the death through his provocative act or aids and abets in the underlying crime the provocateur who causes the death."], italics omitted.)

Because the provocative act doctrine requires proof that the defendant personally harbored malice, several courts have concluded that petitioners who were convicted of provocative act murder were categorically ineligible for resentencing under section 1172.6. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1173 (*Flores*) [denying resentencing petition because, at the time of petitioner's conviction, "a provocative act murder conviction required the defendant personally harbor malice, whether it was the defendant or an accomplice who committed the provocative act that caused the death"]; *People v. Antonelli* (2023) 93 Cal.App.5th 712, 721 (*Antonelli*), review granted Oct. 18, 2023, S281599 [denying resentencing petition because petitioner "was convicted pursuant to the provocative act murder doctrine, which requires that the defendant personally harbor malice"]; *People v. Lee* (2020)

9

49 Cal.App.5th 254, 265 ["Because [petitioner] was convicted of provocative act murder, the jury necessarily found he acted with malice aforethought."], review granted Nov. 23, 2021, S262459.)

However, in *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee*), our colleagues in the Second District Court of Appeal concluded that, prior to *People v. Concha* (2009) 47 Cal.4th 653 (*Concha*), there was—at the very least—some uncertainty in the case law about whether *non-provocateur accomplices* were required to personally harbor malice to be found guilty of provocative act murder. The *Lee* court analyzed the Supreme Court's pre-*Concha* provocative act doctrine precedent.[5] Based on this historical analysis, the court determined a *non-provocateur accomplice* seemingly could be found guilty of provocative act murder, prior to *Concha*, "based on the malicious and provocative acts of his confederates, without a showing that the defendant himself harbored malice." (*Lee,* at p. 1178; see *id.* at p. 1177 ["[P]rovocative act murder … require[d] proof of malice aforethought, … [but] it was sufficient that only the provocateur him-or herself—the perpetrator who initiate[d] the gun battle, for example—act[ed] with that mental state."].)

According to the *Lee* court, *Concha* was the first Supreme Court case that "discussed provocative act murder in terms of the individual mental states of multiple surviving accomplices." (*Lee, supra*, 95 Cal.App.5th at p. 1180.) In *Concha*, the Supreme Court "observed that, '[w]hile joint participants involved in proximately causing a murder " 'are tied to a "single

_____

5      The *Lee* court discussed the Supreme Court's decisions in *People v. Washington* (1965) 62 Cal.2d 777, *People v. Gilbert* (1965) 63 Cal.2d 690, *Taylor v. Superior Court* (1970) 3 Cal.3d 578, *People v. Taylor* (1974) 12 Cal.3d 686, *People v. Antick* (1975) 15 Cal.3d 79, and *People v. Caldwell* (1984) 36 Cal.3d 210, and numerous Court of Appeal decisions pertaining to the provocative act doctrine. (*Lee, supra*, 95 Cal.App.5th at pp. 1175–1180.)

10

and common actus reus," "the individual mentes reae or levels of guilt of the joint participants are permitted to float free and are not tied to each other in any way. If their mentes reae are different, their independent levels of guilt ... will necessarily be different as well." ' " ' " (*Ibid.*, quoting *Concha, supra*, 47 Cal.4th at p. 662.) Therefore, the *Concha* court explained, " '[t]he defendant or an accomplice must proximately cause an unlawful death, *and the defendant must personally act with malice*' " for the defendant to be found guilty of provocative act murder. (*Lee*, at p. 1181, italics added.)

Based on its conclusion that pre-*Concha* "case law imposed culpability on all perpetrators of the underlying crime so long as the provocateur acted with malice," the *Lee* court held that a pre-*Concha* provocative act murder conviction does not categorically preclude relief under section 1172.6 where the record of conviction leaves open the possibility the petitioner might have been convicted as a non-provocateur accomplice. (*Lee, supra*, 95 Cal.App.5th at pp. 1182–1185.) Appellate courts are now divided on this issue. (Compare *Antonelli, supra*, 93 Cal.App.5th at pp. 720–721 [pre-*Concha* provocative act murder conviction precluded resentencing] with *Lee,* at pp. 1175–1181 [petitioners with pre-*Concha* provocative act murder convictions may be entitled to resentencing]; see also *Flores, supra*, 96 Cal.App.5th at p. 1173, fn. 4 [disagreeing with *Lee*'s conclusion that *Concha* was the first Supreme Court case to impose a personal malice requirement for non-provocateur accomplices].) The issue is also pending review before the Supreme Court. (*Antonelli, supra*, 93 Cal.App.5th 712, review granted.)

Blaney urges us to reverse the summary denial order based on the *Lee* court's analysis of the historical precedent. However, we need not decide whether *Lee* was correctly decided or wade into the split of appellate authority because *Lee* involved a petitioner whose record of conviction left

11

open the possibility that he might have been convicted of provocative act murder as *a non-provocateur accomplice*, whereas Blaney was incontrovertibly found guilty of murder *as the provocateur*. And the caselaw has *always* imposed a requirement that the provocateur act with malice for a provocative act murder conviction. (*Flores, supra*, 96 Cal.App.5th at p. 1172 ["the law has always required a defendant who committed a provocative act personally harbor malice and [it] still does"]; *Lee, supra*, 95 Cal.App.5th at p. 1182 [before *Concha*, "the case law imposed culpability on all perpetrators of the underlying crime *so long as the provocateur acted with malice*"], italics added; see also *People v. Briscoe* (2001) 92 Cal.App.4th 568, 583 ["a central inquiry in determining a defendant's criminal liability for a killing committed by a resisting victim is whether the defendant's conduct was sufficiently provocative of lethal resistance to support a finding of implied malice"].)

Blaney does not dispute the Attorney General's assertion that he was found guilty of murder in his capacity as the provocateur. Nonetheless, we observe for the sake of completeness that the record of conviction irrefutably supports the Attorney General's position on this issue. During closing arguments, the prosecution presented a single theory of murder liability—

that Blaney was guilty of murder as the provocateur.[6]  Thereafter, the jury was instructed with CALJIC No. 8.12 ("Murder—Killer Other Than Perpetrator of Underlying Crime—Provocative Act Doctrine"), which expressly stated the jury could find Blaney guilty of murder only if it found he "committed an intentional provocative act."  By contrast, the jury was not instructed with CALJIC No. 8.13 ("Liability for Murder by Participant in Provocative Act Murder"), which might otherwise have allowed the jury to find Blaney guilty of murder as a non-provocateur accomplice.

Blaney's record of conviction therefore conclusively demonstrates that the jury found him guilty of provocative act murder as the provocateur, rather than a non-provocateur accomplice.  The caselaw has always imposed a requirement that a provocateur act with malice, either express or implied, under the provocative act doctrine.  (See *Flores, supra*, 96 Cal.App.5th at p. 1172; *Lee, supra*, 95 Cal.App.5th at p. 1182.)  Thus, the jury's verdict precludes Blaney from establishing that he "could not presently be convicted of murder … because of changes to Section 188 or 189" implemented by Senate Bill 1437 (§ 1172.6, subd. (a)(3)), and the trial court properly denied Blaney's petition to vacate his conviction for the murder of Englebrecht.

---

[6]  During closing statements, the prosecutor stated, "The doctrine of law under which we're proceeding is provocative murder.  He's not the killer.  The bullet from his gun did not kill the dead person.  His action of shooting caused someone to shoot back, killing someone.  That's provocative act murder. [¶] … [T]he theory of provocative [act] murder is just common sense. If you do an act that causes someone else to respond with deadly force and somebody gets killed and you are wrong in doing that first provocative act, you should be guilty – held accountable, responsible for the person who winds up dead because it's your fault.  That's why Randy Blaney said to the officer, to the detective, 'I killed Chris.'  Because he knew he was responsible for Chris's death because of his actions. [¶] ... [¶] … The bottom line in this case is this:  Randy Blaney and his partner tried to rob [E.S.]  During that attempted robbery, Blaney fired two shots at [E.S.]  That's a provocative act."

13

B. *The Trial Court Correctly Declined to Vacate the Attempted Murder Conviction*

Blaney does not argue that the trial court erred by summarily denying his petition to vacate his conviction for the attempted murder of E.S. He therefore has waived any challenge to the trial court's denial of relief as to the attempted murder conviction. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1029 [" ' "[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." ' "].)

Even if Blaney had challenged the denial of relief as to the attempted murder conviction, we discern no error in the trial court's ruling. Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548; see *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 [a "petition [is] properly denied as to [an] attempted murder conviction … if the record affirmatively demonstrates the jury did not rely on the natural and probable consequences doctrine"].) Here, the jury could not have convicted Blaney of attempted murder under the natural and probable consequences doctrine because the jury was never instructed on the natural and probable consequences doctrine. Because Blaney was not found guilty of attempted murder under the natural and probable consequences doctrine, the trial court properly denied the petition for resentencing insofar as it sought to vacate the attempted murder conviction. (*Coley*, at p. 548 [summary denial of petition to vacate attempted murder conviction proper because jury was not instructed on natural and probable consequences doctrine]; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205 ["the jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to [petitioner]. He is therefore ineligible for resentencing"].)

14

## IV

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

DO, J.