Filed 3/29/22  P. v. Ballardo CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B290567 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM008237) |
| v. | |
| VICTOR BALLARDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Marcelita V. Haynes, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary

A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In February 2005, the People filed a petition to commit appellant Victor Ballardo as a sexually violent predator (SVP). After a March 2018 trial, the court found appellant to be an SVP and ordered him committed for a two-year term.

On appeal, appellant does not dispute that substantial evidence supported the court's finding that he was an SVP. Instead, he argues that: (a) the length of delay between the filing of the petition and the trial thereon violated his due process right to a timely trial; (b) the court erred in failing to inquire into a potential conflict of interest between his counsel and him, namely that bringing a motion to dismiss would have been beneficial to appellant, but damaging to his counsel; and (c) his counsel was ineffective in failing to bring a motion to dismiss.

We conclude: (a) that appellant's due process rights were not violated because his counsel requested or agreed to virtually all the continuances in this case, and those actions are charged to appellant; (b) that appellant has failed to cite any evidence presented to the court regarding a potential conflict of interest, and thus failed to demonstrate that any lack of inquiry constituted error; and (c) that appellant has failed to demonstrate the failure to file a motion to dismiss

constituted ineffective assistance of counsel.  Accordingly, we affirm the judgment.

## STATEMENT OF RELEVANT FACTS

### A.  *The People File a Petition; Appellant Waives Probable Cause Hearing*

On February 3, 2005, the People filed a petition to commit appellant as an SVP.  The petition alleged appellant had been convicted in 1982 under Penal Code section 287, subdivision (b)(2) (sodomy by a person over 21 with a person under 16) and in 2000 under Penal Code section 288, subdivision (a) (lewd or lascivious act on child younger than 14), had been diagnosed with a mental disorder, posed a danger to the health and safety of others, was predatory, and was likely to reoffend without appropriate treatment and custody.  Appellant denied the petition and waived his probable cause hearing.  The court (Judge Richard E. Rico) found probable cause existed to believe appellant was likely to engage in sexually violent predatory criminal behavior upon release, and ordered appellant transported to a state mental hospital.  A pretrial hearing was set for March 24, 2005.

**B.** *The Court Holds a Supplemental Probable Cause Hearing Four Years Later*

From March 24, 2005, to November 12, 2008, the pretrial hearing was continued 19 times.[1] All but one of those continuances were at the request of appellant's counsel or pursuant to an agreement between both counsel.[2] With the exception of June 7, 2006, when appellant's counsel stated he needed a continuance "for further preparation," the record discloses no reasons for the continuances. Appellant's appearance was waived at all but two hearings.[3] On November 12, 2008, pursuant to a stipulation by both counsel, the court set a supplemental probable cause hearing for January 26, 2009.

On January 26, 2009, pursuant to a stipulation by both counsel and due to court congestion, the court (Judge Maria E. Stratton) continued the probable cause hearing to February 20, 2009. On February 20, 2009, the court

---

[1] From March 2005 to May 2005, Judge Rico presided. From September 2005 to December 2005, Judge Gus Gomez presided. In March 2006, Judge Lawrence H. Cho presided. From June 2006 to July 2007, Judge Marcelita V. Haynes presided. From September 2007 to July 2008, Judge Dennis Landin presided. From October 2008 to November 2008, Judge Clifford L. Klein presided.

[2] The record is silent on why a December 2005 pretrial hearing was continued to March 2006.

[3] For hearings scheduled on February 6, 2008, and November 12, 2008, there is no notation regarding appellant's waiver of appearance.

determined the probable cause hearing could not take place because of the unavailability of the staff at the hospital where appellant had been remanded. Pursuant to a stipulation by both counsel, the court continued the hearing to March 27, 2009. Appellant's presence was waived.

On March 27, 2009, the probable cause hearing began but was not completed. Appellant appeared via videoconference. With appellant's agreement, the court set the next hearing date for May 27, 2009.

On May 27, 2009, appellant's counsel informed the court that an evaluation by an expert testifying for the People had become "stale," and that the expert wanted to update it. Appellant's appearance was waived, but his counsel confirmed he had spoken with appellant, who had agreed to a continuance until a new evaluation could be done; the court continued the probable cause hearing to July 13, 2009.

On July 13, 2009, the hospital housing appellant had a power outage, rendering it impossible for appellant to appear via videoconference. Pursuant to the stipulation of counsel, the hearing was continued to the next day. However, the problem was not fixed by the next day and, by stipulation of both counsel, the hearing was continued to September 14, 2009.

On September 14, 2009, the probable cause hearing resumed, with appellant appearing via videoconference; the court found probable cause to remand appellant to the

5

Department of Mental Health pending trial. A pretrial conference was set for November 17, 2009.

## C. *Appellant Forgoes a Trial Date to File a* Ronje *Motion*

On November 17, 2009, at the request of appellant's counsel who stated he wanted more time to review a transcript, the court (Judge Melissa Widdifield) continued the pretrial hearing to February 2, 2010. Appellant was present via videoconference and agreed to the continuance. Appellant's counsel assured the court that trial would commence by summer of 2010. The minute order states: "Time is waived."

On February 2, 2010, pursuant to a stipulation by both counsel, the court continued the pretrial hearing to March 25, 2010. Appellant was present via videoconference and did not object.

On March 25, 2010, pursuant to a stipulation by both counsel and appellant's desire to file a *Ronje* motion, the court continued the pretrial hearing to April 28, 2010, and set the *Ronje* motion to be heard on that date.[4] Appellant

---

[4]    *In re Ronje* (2009) 179 Cal.App.4th 509, disapproved in part by *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 655, "held that a particular standardized assessment protocol used by SVP evaluators prior to 2008 was invalid and its use 'constitute[d] an error or irregularity in the SVPA proceedings.' [Citation.] The court held that 'the proper remedy' is for the trial court 'to (1) order new evaluations of [the alleged SVP] using a valid assessment protocol, and (2) conduct another probable cause
*(Fn. is continued on the next page.)*

6

was present via videoconference, and the court confirmed his desire to no longer be sent out for trial in lieu of filing a *Ronje* motion.  Appellant also confirmed he was agreeable to his trial being held at a date later than April 28, 2010.

On April 28, 2010, pursuant to a stipulation by both counsel, the court continued the pretrial and *Ronje* hearings to May 6, 2010.  Appellant was present via videoconference and agreed to the continuance.

On May 6 and May 17, 2010, pursuant to a stipulation by both counsel, the court (Judge Pro Tem Connie Drath and then Judge Stratton) continued the pretrial and *Ronje* hearings to May 17, 2010 and then to Jun 1, 2010, to permit Judge Widdifield to be present.[5]  Appellant was present via videoconference and agreed to the continuances.  When asked at the May 17 hearing if he agreed to a continuance, appellant responded: "I got all the time in the world."

On June 1, 2010, the court (Judge Widdifield) partially granted appellant's *Ronje* motion and ordered new evaluations of appellant to be conducted by the original

---

hearing . . . based on those new evaluations."  (*People v. DeCasas* (2020) 54 Cal.App.5th 785, 792 (*DeCasas*).)

[5]      In his brief, appellant claims that it was the prosecutor who did not want Judge Pro Tem Drath to decide the issue; that contention is belied by the record.  The prosecutor said nothing about Judge Drath, and it was appellant's counsel who said (while explaining to appellant what was happening): "As you can see, this woman is not Judge Widdifield, so what I want to do -- what we have to do is put this over for Judge Widdifield, and we're going to figure it out."  Appellant responded, "That's fine."

7

evaluators.  The court also set a July 13, 2010 hearing to select a date for a probable cause hearing. Appellant was present via videoconference and agreed to the hearing date.

### D.   *The Court Again Finds Probable Cause*

On July 13, 2010, at appellant's request, the court set a pretrial hearing for August 25, 2010.  Appellant was present via videoconference, and the minute order states: "Time is waived."

On August 25, 2010, pursuant to a stipulation by both counsel, the court set a September 20, 2010 hearing to select a date for the probable cause hearing, because appellant's counsel had yet to receive the reports from the new evaluations.  Appellant was present via videoconference and agreed to the September 20 date, as well as having his probable cause hearing sometime in November.  On September 20, 2010, pursuant to a stipulation by both counsel, the court (Judge Stratton) continued the probable cause hearing setting to November 17, 2010.  Appellant was present via videoconference, and the minute order states: "Time is waived."  On November 17, 2010, the court (Judge Pro Tem Harold Shabo) noted the probable cause hearing would be held on January 4, 2011.  Appellant was present via videoconference.

The court held the probable cause hearing from January 4 to 6, 2011.  The hearing did not conclude on January 6 and, pursuant to a stipulation by both counsel, the court continued the hearing to February 8, 2011.

8

On February 8, 2011, pursuant to a stipulation by both counsel, the court continued the probable cause hearing to February 16, 2011, because appellant's counsel had a personal emergency. Appellant was present via videoconference, and agreed to the continuance.

On February 16, 2011, the court found probable cause existed to believe appellant was likely to engage in sexually violent predatory criminal behavior upon release, and therefore remanded him to the Department of Mental Health pending trial. The court set a pretrial hearing for March 29, 2011.

E.  *The Trial Date Is Repeatedly Continued for Six-and-a-Half Years*

On March 29, 2011, both counsel stated they were ready for trial and the court set a trial setting conference for April 27, 2011. Appellant was present via videoconference. On April 29, 2011, the court (Judge Gary J. Ferrari) set a pretrial status conference for June 15, 2011, and set trial for October 17, 2011.

On June 15, 2011, the prosecutor stated that she had a three-day hearing beginning October 24, 2011, and was concerned appellant's case would not conclude prior to her hearing. However, counsel explained her hearing consisted only of afternoon sessions, and offered to appear in the mornings to complete appellant's trial if necessary; she confirmed the People were prepared to proceed. The court expressed concern about wasting juror time with half-days of

trial and asked both counsel to express their thoughts. Appellant's counsel agreed with the court, stated he was willing to "waive time" on appellant's behalf, and asked for a trial date of December 5. The People agreed. The court set a status conference on July 27, 2011, a discovery compliance and trial setting hearing on October 17, 2011, and a jury trial on December 5, 2011.

Between July 27, 2011, and November 7, 2011, the court continued the status conference five times. Except for July 27, 2011, where the record fails to disclose the reason for the continuance, these continuances occurred at the request of both counsel.

On November 7, 2011, at the request of both counsel, the court (Judge Bradford Andrews) continued the trial to March 19, 2012. On December 5, 2011, at the request of both counsel, the court (Judge Ferrari) set a pretrial conference for February 21, 2012.

On February 21, 2012, appellant's counsel still had not provided the People with the defense expert's report. At the request of appellant's counsel, the court (Judge Arthur Jean on behalf of Judge Ferrari) vacated the trial date and set a pretrial hearing for March 19, 2012. At the People's request, appellant's counsel agreed to obtain a written time waiver from appellant, to be filed by March 19.

On March 19, 2012, appellant's counsel stated he still had not provided "defense material" to the People. The People stated they were ready to proceed, regardless. At the request of appellant's counsel, the court (Judge Ferrari) set a

10

pretrial hearing for June 19, 2012.  The court confirmed that it had received a waiver of appellant's appearance.

On June 19, 2012, appellant's counsel was ill, and the prosecutor represented that all counsel requested a trial date of August 20, 2012.  The court set a trial date for August 20, 2012.  The record is silent as to why the August 20 trial did not occur but on October 9, 2012, at the request of appellant's counsel, the court set trial for November 6, 2012.

Between November 6, 2012, and October 31, 2013, the court continued trial three times, at the request of either appellant's counsel or both counsel.

On October 31, 2013, at the request of both counsel, the court set a pretrial hearing to March 14, 2014.  Appellant's appearance was waived, but his counsel confirmed that appellant agreed both to the continuance, and for trial to occur sometime thereafter.

On March 14, 2014, at the request of both counsel, the court continued the pretrial hearing to December 18, 2014.  At the request of appellant's counsel or both counsel, the pretrial hearing was continued twice more to July 22, 2015.

On July 22, 2015, appellant's counsel informed the court that appellant was recovering from surgery.  At the request of appellant's counsel, the court continued the pretrial hearing to December 17, 2015.  Appellant's appearance was waived, but his counsel confirmed that he had spoken with him, and appellant was amenable both to the continuance, and that he would not go to trial until 2016.

11

Between December 17, 2015, and August 30, 2016, at the request of appellant's counsel or both counsel, the court continued the pretrial hearing four times, ultimately to December 6, 2016. On December 6, 2016, at the request of both counsel, the court continued the pretrial hearing to March 16, 2017, and set a trial date for June 27, 2017. Appellant's appearance was waived.

On March 13, 2017, the case was transferred to Judge Marcelita V. Haynes. On March 16, 2017, at the request of both counsel, the court vacated the June 27, 2017 trial date and instead set a pretrial hearing for that date. Appellant was present via videoconference. The pretrial hearing was continued twice more at the request of both counsel, to December 13, 2017.[6]

On December 13, 2017, at the request of both counsel, the court continued the pretrial conference to January 5, 2018, and also ordered appellant's motion to quash a subpoena to be heard on that date. Appellant's counsel additionally informed the court that his defense expert's report would not be completed until January 2018; the court set trial for February 21, 2018.

On January 5, 2018, the court denied appellant's motion to quash, set a pretrial hearing for February 5, 2018,

---

[6] At an August 2017 hearing, the court was under the impression that trial was set for December 13, 2017. In correcting that impression, the prosecutor told the court, "Expert won't be ready [in December]. So we will give you some dates" for trial at the December 13, 2017 hearing.

and confirmed trial would begin on February 21, 2018. Appellant was present via videoconference.

On February 5, 2018, appellant's counsel informed the court that his expert had been unable to see appellant due to a lockdown at the hospital in which appellant was housed. At the request of both counsel, the court set a further status conference for February 16, 2018. Appellant was present via videoconference.

On February 16, 2018, appellant's counsel stated he was still awaiting his expert's report. The court set a pretrial hearing on March 7, 2018, and continued trial until March 9, 2018. Appellant was present via videoconference.

On March 9, 2018, the court stated it had been unable to thoroughly review some of the filings in the case, set a hearing for March 13, 2018, and set trial for March 20, 23, and 28. Appellant was present via videoconference.

On March 13, 2018, the court decided certain pretrial motions, and confirmed a court trial would begin on March 20, 2018.[7] Appellant was present via video conference.

Trial was held on March 20, 23, and 28, and April 13 and 27, 2018. On May 22, 2018, the court found appellant to be an SVP and committed him for a two-year term. Appellant appealed the same day.

---

[7] The record does not disclose when the parties waived jury.

# DISCUSSION

## A. *Appellant's Due Process Right Was Not Violated*

### 1. We Decline to Find Forfeiture

It is undisputed that appellant did not file a motion to dismiss on the grounds that the delay in holding his trial violated his right to due process, and neither he nor his counsel ever objected to the continuances. Citing *People v. Tran* (2021) 62 Cal.App.5th 330 (*Tran*), the People contend appellant has thereby forfeited the argument that his due process rights were violated.

We find *Tran* inapposite. *Tran* held that by objecting to the delays in bringing his case to trial, the appellant sufficiently preserved his due process argument, even though he did not file a motion to dismiss. (*Tran, supra*, 62 Cal.App.5th at 346 ["Provided that a defendant objects to the delay—as defendant did here on numerous occasions—a federal constitutional claim regarding the deprivation of a timely trial is preserved even if no motion to dismiss is filed"].) *Tran* did not hold that such an objection was necessary. Indeed, in *People v. Seaton* (2001) 26 Cal.4th 598, our Supreme Court found that "a defendant's mere silence in the face of a continuance does not waive the constitutional right to speedy trial because a waiver occurs only when there is a conscious relinquishment of a known right." (*Id.* at 633.) Moreover, to be valid, "'waivers of constitutional rights must, of course, be "knowing, intelligent acts done with sufficient

14

awareness of the relevant circumstances and likely consequences[,]" . . . [and] must be unambiguous and "without strings.""" (*People v. Bonin* (1989) 47 Cal.3d 808, 837 (*Bonin*).)

Here, appellant did not merely remain silent in the face of continuances requested by the prosecution or imposed by the court -- through his counsel, he actively sought or agreed to such continuances. Nevertheless, we find instructive the case of *People v. Washington* (2021) 72 Cal.App.5th 453. There, after the appellant's counsel had waived his right to a jury trial under the Sexually Violent Predator Act (SVPA) and the court found the appellant to be an SVP, the appellant appealed, claiming his right to equal protection under the law had been violated, because those tried under the SVPA were not entitled to have a court advise them of their right to a jury trial, whereas those tried under other involuntary civil commitment acts were so entitled. (*Id.* at 471-472.) Though the appellant had not raised this argument below, our colleagues in Division Seven declined to find forfeiture, reasoning that because it was the appellant's attorney who had waived the right to jury, "it is hard to envision how counsel could have asserted this claim." (*Id.* at 473-474.) Specifically, the court found "[t]he only way Washington could have asserted an equal protection challenge in the trial court would have been for his attorney to request the trial court advise Washington of his right to a jury trial and take a personal waiver of that right. Then, if the court declined to do so based on the absence of a

requirement in the SVPA, Washington's attorney could have argued not doing so would violate equal protection principles. But presumably, Washington's attorney believed Washington wanted to proceed with a court trial (which may or may not have been the case), and thus, counsel would have been unlikely to demand the court advise Washington of his jury trial right and take a personal waiver. . . . Under these unusual circumstances, we decline to find forfeiture based on Washington's failure to raise an equal protection challenge in the trial court." (*Id.* at 474.)

Similarly, the only way for appellant to have raised his due process claim below would have been for his attorney to argue that the repeated continuances were violating appellant's right to due process. But because appellant's counsel was the one seeking or agreeing to almost all the continuances, it would have been unlikely that he would contend such continuances were violations of appellant's right to due process. Under these circumstances, as well as the fact that nothing in the record demonstrates appellant ever made a knowing and intelligent waiver of his right to a timely trial, we decline to find forfeiture.

### 2. Due Process Right to Speedy Trial in SVPA Proceedings

"Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections." (*People v. Otto* (2001) 26 Cal.4th 200, 209.) "This includes the due process right to a

*timely* trial." (*Tran, supra,* 62 Cal.App.5th at 347; see also *id.* at 347, fn. 13 ["Although the Sixth Amendment right to a speedy trial and the Fourteenth Amendment due process right to a timely trial are distinct, for the purpose of our analysis they are sufficiently analogous to be treated interchangeably"].)

"'Neither the California Supreme Court nor the United States Supreme Court has decided what test is to be applied in deciding a due process/timely trial claim in an SVP proceeding.' [Citation.] California Courts of Appeal have consistently applied the tests articulated in *Barker v. Wingo* (1972) 407 U.S. 514 [33 L. Ed. 2d 101, 92 S. Ct. 2182] (*Barker*) and *Mathews v. Eldridge* (1976) 424 U.S. 319 [47 L. Ed. 2d 18, 96 S. Ct. 893] (*Mathews*)." (*Tran, supra,* 62 Cal.App.5th at 347-348.)

### 3.     *Barker* Analysis

In *Barker*, the United States Supreme Court established a balancing test to analyze criminal defendants' claims of speedy trial rights violations under the Sixth Amendment. "The *Barker* test involves a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (*U.S. v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency* (1983) 461 U.S. 555, 564.) These factors are "related . . . and must be considered together with such other circumstances as may be relevant." (*Barker, supra,* 407 U.S. at 533.) "The burden of

17

demonstrating a speedy trial violation under *Barker*'s multifactor test lies with the defendant."  (*People v. Williams* (2013) 58 Cal.4th 197, 233 (*Williams*).)  Courts have applied this framework to consider claims of undue delay in the context of SVPA proceedings.  (See, e.g., *People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36, 60-81 (*Vasquez*); *People v. Landau* (2013) 214 Cal.App.4th 1, 31 (*Landau*); *People v. Litmon* (2008) 162 Cal.App.4th 383, 404-406 (*Litmon*); *Page v. Lockyer* (9th Cir. 2006) 200 Fed. Appx. 727; *Yahn v. King* (N.D.Cal. Jan. 6, 2016, No. C-13-0855 EMC (pr)) 2016 U.S.Dist. LEXIS 1213, at *19 [lower courts assessing speedy trial claims in civil commitment proceedings "have repeatedly turned to the law of speedy trial rights in the criminal context -- especially [*Barker*] -- for guidance[,] as it is the most appropriate analogy"].)

### (a)   Length of Delay

"The first *Barker* factor, the length of the delay, encompasses a 'double enquiry.'  'Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay [citation] . . . .  If the accused makes this showing, the court must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.  [Citation.]'"  (*Williams*, *supra*, 58 Cal.4th at 234.)  The People concede, and we agree,

18

that the 13-year delay between the filing of the petition and trial was "substantial" and "weighs in appellant's favor."

## (b) Reasons for Delay

While we conclude that all parties -- appellant, the People, and the trial court -- bear some responsibility for the delay, we find the delay chargeable primarily to appellant.

## (i) Appellant

"Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant. [Citation.] The same principle applies whether counsel is privately retained or publicly assigned." (*Vermont v. Brillon* (2009) 556 U.S. 81, 90-91, fn. omitted (*Brillon*).) However, "[t]he general rule attributing to the defendant delay caused by assigned counsel is not absolute. Delay resulting from a systemic 'breakdown in the public defender system,' [citation], could be charged to the State." (*Id.* at 94.)

The record discloses that all but seven of the more than 60 continuances in this case resulted from either a request from appellant's counsel, or a joint request from both counsel.[8] Appellant argues that we should not charge these

---

8    Out of the seven continuances appellant did not request or agree to (but to which he did not object), the record is silent as to the reasons for three of them -- continuances of pretrial hearings from December 13, 2005 to March 14, 2006, from July 27 to
*(Fn. is continued on the next page.)*

19

delays to him, because they resulted from a systemic breakdown of the SVP Unit. Appellant cites nothing in the record to support his theory. Instead, he contends that the cases of *Vasquez* and *DeCasas* collaterally estop the People from contesting his argument. We disagree.

"Collateral estoppel has been held to bar relitigation of an issue decided at a previous trial if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial." (*People v. Taylor* (1974) 12 Cal.3d 686, 691, overruled on other grounds by *People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1.) In *Vasquez*, Division Seven held that the trial court did not err in finding "'[t]he dysfunctional manner in which the Public Defender's Office handled Mr. Vasquez's case'" constituted a "systemic or institutional breakdown" that could not be attributed to the appellant. (*Vasquez, supra*, 27 Cal.App.5th

---

August 30, 2011, and from August 30 to December 6, 2016. Two others -- continuances of a supplemental probable cause hearing from February 20 to March 27, 2009 and from July 13 to September 14, 2009 -- were due to issues at the hospital where appellant was housed. The remaining two were attributable to the court -- a continuance of the supplemental probable cause hearing from January 26 to February 20, 2009 for court congestion, and the continuance of trial from March 9 to March 20, 2018 because the court had not had time to thoroughly review the parties' filings.

at 73.)  Similarly, in *DeCasas*, our colleagues in Division One held that the trial court did not err in finding that the delays in bringing DeCasas's case to trial were due to "a systemic breakdown in the public defender's office." (*DeCasas, supra*, 54 Cal.App.5th at 810.)  However, the question before us is not whether the SVP Unit suffered a systemic breakdown, but whether any such breakdown was the cause of the delays in bringing appellant's case to trial.  This issue obviously was not addressed in *Vasquez* or *DeCasas*.  Because "the issue necessarily decided" in those two cases is not "identical to the one which is sought to be relitigated," we find collateral estoppel inapplicable.  (*People v. Taylor*, *supra*, 12 Cal.3d at 691.)

In *Williams*, our Supreme Court found that "most of the delay in this case, apart from the periods already attributed to defendant, resulted from defense counsel's failure to make progress in preparing defendant's case" (*Williams*, *supra*, 58 Cal.4th at 244), but concluded that the delay must be charged to the defendant absent evidence in the record demonstrating a systemic breakdown in the public defender system (*id.* at 247).  It found that "the record on appeal contains no facts that affirmatively support this conclusion.  Because defendant did not file a motion to dismiss on speedy trial grounds in the trial court, the underlying cause of the delay in this case was never litigated, the various statements by defendant and his attorneys were never examined in an adversarial proceeding, and the trial court made no findings that might inform the

21

issue before us." (*Id.* at 248.)  Similarly, in *Tran*, decided after *Vasquez* and *DeCasas*, the court held that "[w]ithout a more developed factual record, we cannot make a determination whether the defense delays were justifiable, or 'whether the lack of progress was attributable to each attorney's own inability to properly manage or prioritize his or her caseload, or whether the performance of individual attorneys was indicative of unreasonable resource constraints, misallocated resources, inadequate monitoring or supervision, or other systemic problems.'  [Citation.] Accordingly, we must attribute all delays caused by defense counsel to defendant." (*Tran*, *supra*, 62 Cal.App.5th at 352.) The same lack of evidence in this record before us compels the same conclusion.

### (ii)   The People

While "[t]he People's due process obligation in an SVPA proceeding cannot be defined with precision," it must "diligently prosecute the case.  This may entail stating on the record that it is prepared to go to trial, taking affirmative steps to set a trial date, promptly requesting clinical evaluations and records, and securing the attendance of witnesses in a timely manner.  Continuance requests, whether by defense counsel or the prosecution, should be supported by an affirmative showing of good cause, and where such a showing is lacking, an objection to the request may be warranted.  Where the prosecution encounters repeated continuances of a setting hearing or

trial date, or other dilatory tactics, diligent prosecution of an SVP petition may necessitate objecting to the delays, insisting upon trial deadlines, and making the trial court aware of the length of time since the filing of the SVP petition or other pertinent details from the record. The prosecution may even find it necessary to seek the removal of appointed counsel, the appointment of new or additional counsel, or other measures to ensure that an alleged SVP defendant is brought to trial at a meaningful time and in a meaningful manner." (*In re Butler* (2020) 55 Cal.App.5th 614, 655 (*Butler*).)

Here, while the prosecution did announce its readiness for trial several times, it never objected to appellant's requests for continuances, even though appellant's counsel frequently failed to explain why a continuance was needed. The prosecution did not insist on trial deadlines or voice concerns about the age of the case. It never sought to have appellant's counsel removed. Thus, we find the People also bear some responsibility for the delay.[9]

---

[9] We disagree with appellant's contention that the prosecution is responsible for the delay of the October 2011 trial date. In June 2011, after having previously agreed to an October 17, 2011 trial date, the prosecutor informed the court she had a three-day hearing beginning October 24, 2011, and had concerns that appellant's trial would not conclude prior to that hearing. However, the prosecutor offered to appear during the mornings of her three-day hearing if necessary to complete appellant's trial. Agreeing with the court that such a plan could inconvenience jurors, appellant's counsel was the one who requested a
*(Fn. is continued on the next page.)*

## (iii)  The Trial Court

The trial court also had an obligation to ensure appellant received a timely trial.  "Even where the attorneys stipulate to continue a trial date, the trial court has an obligation to determine whether there is a good cause for the continuance.  The trial court also has a responsibility absent a written time waiver to inquire of a defendant whether he or she agrees to the delay." (*Vasquez*, *supra*, 27 Cal.App.5th at 75; see also *Williams*, *supra*, 58 Cal.4th at 251 ["the trial court has an affirmative constitutional obligation to bring the defendant to trial in a timely manner"].)  Even a "neutral reason such as negligence or overcrowded courts should be weighted less heavily [against the government] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the

---

December trial date instead.  Thus, we do not attribute this delay to the People.

We also disagree that the People bear any responsibility for a delay in August 2017, when appellant contends "both attorneys had informed the court that they were not going to be ready for the then scheduled December trial."  The record belies his claim that the prosecution was not ready.  During that hearing, the prosecutor corrected the court's mistaken impression that trial would occur in December 2017, stating, "Expert won't be ready [in December].  So we will give you some dates" for trial at the next hearing.  While the record does not identify which expert would not be ready, the prosecutor was likely referring to appellant's expert; at the next hearing, appellant's counsel informed the court that his expert's report would not be completed until January 2018.  Obviously the People are not responsible for delays caused by a defense expert.

24

government rather than with the defendant." (*Barker, supra,* 407 U.S. at 531, fn. omitted.)

There were over 60 continuances in this case over 13 years. While the court did express concern a few times regarding the age of the case, continuances were frequently granted without an express finding of good cause. For example, on December 17, 2015 -- more than ten years after the original petition was filed -- appellant's counsel informed the court that he and the prosecutor "have agreed on a further pretrial date on Mr. Ballardo's matter for February 22nd, if that date is available." Similarly, at the February 22 hearing, appellant's counsel stated he was requesting a May 4 pretrial hearing. The record reflects no further discussion regarding the continuances. Many other hearings proceeded in a similar matter.

### (c) Appellant's Assertion of Right to Speedy Trial

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." (*Barker, supra,* 407 U.S. at 531-532.) "'The issue is not simply the number of times the accused acquiesced or objected; rather, the focus is on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, the accused's pretrial conduct (as that conduct bears on the

speedy trial right), and so forth. [Citation.] The totality of the accused's responses to the delay is indicative of whether he or she actually wanted a speedy trial.'" (*Williams*, *supra*, 58 Cal.4th at 238.)

Appellant admits he never asserted a right to a speedy trial, but contends we should not weigh this factor against him. He notes that during many of the hearings where he could have asserted this right, he already had a trial date scheduled. He further asserts he had no choice but to agree to the delays because it would have been futile to assert his right to a speedy trial. Finally, he argues that because "there was nothing in the record that suggests that appellant did or did not want a speedy trial," we should find this factor to be neutral. We disagree.

Virtually every continuance was either requested by or agreed to by appellant's counsel and, as discussed above, these requests must be attributed to appellant because there is no evidence in the record to suggest they were due to a systemic breakdown in the SVP Unit. In the few instances in which the court continued the hearing on its own motion or due to unforeseen circumstances, appellant's counsel never objected. Every representation made by appellant's counsel -- and they were numerous -- regarding appellant's attitude toward the continuances was that he understood and agreed with them. Appellant does not contend his counsel misrepresented his understanding or agreement. Moreover, every time appellant was asked about a continuance, he expressly agreed to it, even indicating at one

point that he had "all the time in the world." Further, the burden is on appellant to demonstrate error. (*People v. Thompson* (2016) 1 Cal.5th 1043, 1097, fn. 11 ["On appeal, we assume a judgment is correct and the defendant bears the burden of demonstrating otherwise"].) The evidence in the record shows that appellant did not assert his right to a speedy trial, but rather repeatedly manifested his agreement with the continuances sought or stipulated to by his counsel. In short, because there is no evidence demonstrating he was concerned about this right, we weigh this factor against appellant.

### (d) Prejudice to Appellant

"Whether [a] defendant suffered prejudice as a result of the delay must be assessed in light of the interests the speedy trial right was designed to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" (*Williams, supra,* 58 Cal.4th at 235.) "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" (*Doggett v. U.S.* (1992) 505 U.S. 647, 654.)

"[L]engthy postdeprivation pretrial delay in an SVP proceeding is oppressive. In this case, we cannot turn a blind eye to the years of pretrial confinement that have elapsed following expiration of the last ordered term of commitment." (*Litmon, supra,* 162 Cal.App.4th at 406; see

27

*Barker, supra,* 407 U.S. at 532-533 ["'The time spent in jail is simply dead time'"]; accord, *Williams, supra,* 58 Cal.4th at 235 ["We have no difficulty concluding, even in light of the complexity of the case and the need for adequate preparation, that being jailed without a trial for seven years is 'oppressive'"].) An appellant "need not show 'a loss of witnesses, loss of evidence, or fading memories,'" to demonstrate prejudice. (*Vasquez, supra,* 27 Cal.App.5th at 63.) "Rather, it is the loss of time spent in pretrial custody that constitutes prejudice." (*Ibid.*) A defendant's "extended confinement without any determination that he [is] an SVP" results in an irretrievable loss of liberty, "regardless of the outcome of trial." (*Litmon, supra,* 162 Cal.App.4th at 400.)

The People concede that appellant's pre-trial detention was "undoubtedly oppressive." Appellant does not contend the delay hampered his ability to defend himself at trial. We agree that while appellant undoubtedly suffered prejudice from the delay, it was not the most serious type of prejudice.

### (e)    Balancing the *Barker* Factors

The first factor (length of delay) weighs in appellant's favor. The third factor (assertion of right to speedy trial) weighs against him. For the second factor (reason for delay), we find that while both the prosecution and the court bear some responsibility for the delays, most of the blame falls on appellant, whose counsel requested or agreed to almost all the continuances and did not object to the others. For the fourth factor (prejudice), we agree there is inherent prejudice

28

from being confined for 13 years without a trial, but appellant concedes that he did not suffer the "most serious" prejudice of an impaired defense. Balancing these four factors, we conclude that appellant has not sufficiently demonstrated a violation of his due process rights under the *Barker* test.

### 4. *Mathews* Analysis

Under *Mathews*, we consider three factors: "(1) the private interest affected by the government action; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) the government's interest." (*Tran, supra*, 62 Cal.App.5th at 348.)

"The first and third factors are always the same in an SVP case. With respect to the first factor—the private interest at stake—it is clear that forced civil confinement for mental health treatment constitutes ""a massive curtailment of liberty,"" requiring due process protection. [Citations.] As to the third factor, the government undeniably has a "'compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offenses, and who, as the result of current mental disorders that make it difficult or impossible to control their violent sexual impulses, represent a substantial danger of committing similar new crimes.'" [Citation.] But the state has no interest in detaining individuals who do not qualify

29

as SVPs.  [Citation.]  Moreover, '[e]ven in situations justifying postdeprivation hearings, "[a]t some point, a delay in the . . . hearing would become a constitutional violation."' [Citation.]  Thus, in our view, the governmental interest in continued detention of an alleged SVP lessens as the delay increases without a determination that the individual is, in fact, an SVP." (*Butler*, *supra*, 55 Cal.App.5th at 663.)  Here, on three separate occasions, the court found probable cause that appellant was likely to engage in sexually violent predatory criminal behavior upon release.  We therefore conclude that, despite the delay between petition and trial, the third factor weighs in favor of the government.

As for the second factor, while the length of time before trial did increase the risk that the deprivation of appellant's liberty would be erroneous, it is undisputed that appellant's counsel either requested or agreed to all but seven of the continuances in this case.  It would be nonsensical to find that appellant could create his own due process violation by requesting continuances and then complaining that his hearings were continued.  As to the continuances not requested or agreed to by appellant, those amounted to 36 days of delay caused by the trial court, and 98 days of delay due to problems at the hospital where appellant was confined, all over the course of 13 years.  We find such delays do not amount to a deprivation of due process.  (*Landau*, *supra*, 214 Cal.App.4th at 37 ["A potential civil committee may not seek to continue his trial over and over again and then be heard to complain the court violated due process by

30

granting his requests"]; *id.* at 41-42 ["given the fact that the preceding 14-month-plus delay was at appellant's request, we find the delay from November 5, 2007, to the start of trial proceedings on December 18, 2007, did not amount to a denial of due process under the *Mathews* analysis"].)[10]

**B.** ***The Court Did Not Err in Failing to Inquire About an Alleged Potential Conflict of Interest***

The parties agree that "[w]hen the trial court knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel, it is required to make inquiry into the matter." (*Bonin*, *supra*, 47 Cal.3d at 836.) But "a court can be held to have knowledge or notice of the possibility of a conflict only when . . . it is provided with *evidence* of the existence of a conflict situation . . . . Otherwise, it would effectively be burdened with undertaking an inquiry in virtually all cases since it can almost always conclude that a conflict is 'possible' as a matter of speculation. Such a burden, however, would be intolerable." (*Id.* at 838.) Here, we find that the court was not presented with evidence of the existence of a conflict situation, and therefore had no duty to inquire.

---

[10] Appellant also contends that the second factor favors him because of the existence of a conflict of interest between his counsel and him. As discussed below, nothing in the record evidences such a conflict of interest.

Appellant contends his attorney had a conflict of interest because, after the decision in *Vasquez*, his attorney could not raise a due process claim without explaining why he had not previously done so, and because raising such a claim might have "gotten him in trouble" with his superiors. Appellant's arguments rest on assumptions we are unprepared to make. His counsel would have had a conflict in deciding whether to bring a due process claim only if there was a valid basis to bring such a claim, and only if bringing the claim would have been harmful to counsel. As discussed above, there is simply no evidence of this. Unlike the public defenders in *Vasquez* or *DeCasas*, appellant's counsel never informed the court that he was unable to represent appellant adequately because of staff shortages or increased workload. In *Vasquez*, defense counsel repeatedly told the court she was unable to be ready due to her increased workload, the need to prepare for other matters, and the loss of paralegal assistance. (*Vasquez*, *supra*, 27 Cal.App.5th at 48-50.) Similarly, in *DeCasas,* the public defender informed the court of the increase in his caseload and later testified it prevented him from preparing for DeCasas's trial. (*DeCasas*, *supra*, 54 Cal.App.5th at 796-797.)

No such protestations were heard from appellant's counsel, and appellant fails to explain why his counsel would have been less inclined than those in *Vasquez* and *DeCasas* to inform the court that any increase in workload was

impairing his ability to bring appellant's case to trial.[11]  Nor does appellant point to anything in the record demonstrating that any evidence of a potential conflict of interest was ever brought to the court's attention.  Therefore, we conclude appellant has failed to demonstrate the court erred in not inquiring about a potential conflict of interest.

### C.  *Appellant Fails to Show Ineffective Assistance of Counsel*

Appellant somewhat contradictorily argues that his counsel's failure to file a motion to dismiss after the issuance of the decision in *Vasquez* constituted ineffective assistance of counsel both because his counsel "could have had no valid tactical reason" for failing to file such a motion, and because, due to the purported conflict between appellant and his counsel, his counsel was not entitled to make the tactical decision to not file the motion.  We disagree.

The parties agree that to prevail on an ineffective assistance of counsel claim, appellant must establish both deficient performance under an objective standard of reasonableness and a reasonable probability of a better

---

[11]    Appellant additionally argues that any malpractice claim he had against his public defender would "go away" if appellant were committed as an SVP, and thus it was in his counsel's interest to go to trial rather than file a potentially successful motion to dismiss.  Again, appellant points to nothing in the record to demonstrate that he had any viable malpractice claim against his counsel, much less that any such evidence was brought to the trial court's attention.

outcome. (*People v. Memro* (1995) 11 Cal.4th 786, 818.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.) However, "'where a conflict of interest causes an attorney not to do something, the record may not reflect such an omission. We must therefore examine the record to determine (i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission.'" (*People v. Doolin* (2009) 45 Cal.4th 390, 418.)

Here, as discussed above, we find appellant has failed to demonstrate either a potential or an actual conflict of interest existed between his counsel and him. Moreover, appellant recognizes that his counsel may have opted not to bring a motion to dismiss because, at the time *Vasquez* was decided, appellant had a trial date and filing such a motion would have delayed trial yet again. He further admits that "[i]f, after being fully advised of the consequences of his decision, appellant elected to go to trial . . . and waive his due process claim, that would have been acceptable." Another reason appellant's counsel may have elected not to bring such a motion is simply that there was no basis for it. Again, as discussed above, nothing in the record

demonstrates that any systemic breakdown of the SVP Unit affected appellant's representation.

On this record, given plausible and reasonable reasons that appellant's counsel may have declined to file a motion to dismiss, we cannot conclude that the failure to bring such a motion was due to ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:


COLLINS, J.


CURREY, J.